## Meagher v. Howell, Jr., Chairman, et al.

(Decided September 28, 1916.)

### Appeal from Franklin Circuit Court.

1. Officers—Equity Jurisdiction.—Equity has jurisdiction, not only to preserve the rights which an officer has in his office, but also to protect the rights which a candidate has in his nomination for an office.

2. Officers—Incompatibility—Vacancy.—The acceptance of the office of state banking commissioner by a member of the state senate

created a vacancy in the senatorship, the two offices being in-
compatible.

3. Elections—Vacancy—Writ of Election—Nomination—When Void.
—An election to fill a vacancy contemplates, (1) a vacancy in,
the office; (2) the issuing of a writ of election to be held on a
specific date, and (3) nominations of candidates to be voted for.
A nomination to fill a vacancy where no election had been called
for that purpose, is invalid.

SCOTT & HAMILTON and E. C. O'REAR for plaintiff.

J. H. HAZELRIGG and ELI H. BROWN for defendants.

OPINION OF CHIEF JUSTICE MILLER—Dissolving
Injunction.

This case presents a contest over the Democratic
nomination for senator for the 20th senatorial district
of Kentucky, composed of Franklin, Anderson and Mer-
cer counties.

The defendant, S. W. Howell, Jr., is the chairman of
the Franklin County Democratic Executive Committee,
and the defendant, Burris Morris, is the chairman of
the Anderson County Democratic Executive Committee.
As chairman of their respective county committees,
Howell and Morris, by virtue of rule 23 governing the
Democratic party in Kentucky, constitute a majority of
the present executive committee of the 20th senatorial
district.

In November, 1913, G. G. Speer was elected and he
qualified as senator for the 20th senatorial district
for a term of four years, beginning January 1, 1914.

On the .......... day of June, 1916, the Governor of the
Commonwealth appointed said Speer Banking Commis-
sioner for the Commonwealth of Kentucky. He accepted
the office by taking the oath and qualifying, as required
by law.

The primary election law of 1912 as amended in 1914,
contemplates the selection of all candidates for elective
offices to be voted for at any general election, by a pri-
mary election held in accordance with the provisions of
that act, which is section 1550 of the Kentucky Statutes.
Subsection 3 of that act, however, provides in part, as
follows:

"The provisions of this act shall not apply to va-
cancies in offices to be filled at special elections held at
times other than the regular November elections. Nomi-

nations by political parties to fill vacancies at special elections to be held on days other than the regular November election shall be made in such manner as may be determined by the governing authority of such political party in the territory in which said election is to be held.''

The 23rd rule governing the Democratic party in Kentucky reads as follows:

''The executive committee in all appellate, senatorial, judicial and legislative districts comprised of more than one county, shall be composed of the chairman of the various county committees of said counties composing said districts, and said committee shall be the governing party authority of said districts, and the chairman of the county executive committee of the county that casts the largest Democratic vote at the last preceding November election shall be the chairman of said committee; and said committee shall have full authority to say and to determine how all nominations are made, and to declare all nominees, not inconsistent with the general primary election law.''

Subsection 4 of the primary law provides, in part, as follows:

''Candidates for unexpired terms to be filled at the November election shall be nominated at the primary next preceding such November election: Provided, That such vacancy occurred not less than seventy days before the day on which the next primary is to be held. But if such vacancy occurred less than seventy days before the primary election, the nomination shall be made in such manner as may be determined by the governing authority of the political parties.''

Since the primary election for this year was held on the 5th day of August, the alleged vacancy in the office of senator occurred within less than seventy days before the day on which the next primary thereafter was held, and, consequently the nomination of Speer's successor, if there is a vacancy, must be made in such manner as may be determined by the governing authority of the Democratic party, which in this instance, is the executive committee of the 20th senatorial district. As above pointed out, that committee by virtue of rule 23, has full authority to determine how the nomination shall be made.

Acting under the authority of that rule, the committee as then constituted, met on September 2, 1916, at the Hotel Harrod, in Harrodsburg, Mercer county, and selected the plaintiff, M. J. Meagher as the Democratic nominee for the office of senator for the 20th senatorial district to fill the vacancy claimed to exist by the appointment of Speer as State Banking Commissioner.

On September 11, 1916, Meagher filed this action in the Franklin circuit court against Howell and Morris, as chairman of the Franklin County Democratic Executive Committee and the Anderson County Democratic Executive Committee, respectively, alleging that said defendants were undertaking to hold a meeting of the 20th senatorial district committee to rescind the plaintiff's nomination, and to make another nomination for the office of senator for said district; and that said committee will thereby cast a cloud upon plaintiff's nomination for said office, and will destroy and take from him said nomination unless they are restrained from meeting and making any other nomination for said office.

The petition prays that the defendants be restrained from holding a meeting of the Democratic committee of the 20th senatorial district for the purpose of rescinding the plaintiff's nomination or making any other nomination other than this plaintiff for the office of senator for the 20th senatorial district.

The defendants filed a special demurrer to the petition, denying the circuit court's jurisdiction of the subject-matter of the action, and, they also demurred generally. The facts stated in the petition being undisputed, the case was tried upon the demurrers.

The circuit judge granted the prayer of the petition, whereupon the defendants applied for a dissolution of the injunction; and, upon that application, the case was orally argued before the eastern division of the court.

1. The special demurrer to the petition raised the question of the circuit court's jurisdiction of the subject-matter of the action. Without elaboration, it is sufficient to say that it is well settled in this state that a court of equity has jurisdiction, not only to preserve the rights which an officer has in his office, but also, that it will protect the rights which a candidate has in his nomi-

nation for an office. Poyntz v. Shackelford, 107 Ky. 555; Neal v. Young, 25 Ky. L. R. 184, 75 S. W. 1082.

In Neal v. Young, *supra,* a primary had been called to be held at the expense of the candidates who had paid their entrance fees and had prosecuted their canvasses. The committee thereafter undertook to call off the primary, whereupon an injunction was asked to prevent the committee from so doing. This injunction was granted by the circuit court, and this court refused to dissolve it. See also Commonwealth v. Combs, 120 Ky. 376; Gilbert v. Smith, 145 Ky. 166.

The circuit court had jurisdiction of the subject-matter of the action, and the special demurrer to the petition was properly overruled.

2. Neither do we find any difficulty in arriving at the conclusion that Speer's acceptance of the office of State Banking Commissioner and his qualification as such, created a vacancy in the office of senator for the 20th senatorial district.

Section 27 of the Constitution declares that the powers of the government of this Commonwealth shall be divided into three distinct departments, and each of them is to be confined to a separate body of magistracy; while section 28 of the said instrument further provides that no person being of one of those departments shall exercise any power properly belonging to either of the other departments, except in instances expressly directed or permitted by the Constitution. See also 29 Cyc. 1382, and Meechem on Public Offices, section 422.

The office of State Banking Commissioner and that of senator are clearly incompatible. A senator belongs to the legislative department of the state; the State Banking Commissioner is appointed by the Governor, and performs executive duties.

The test of incompatibility being the relation and character of the offices, or where the function of the two offices are inherently inconsistent and repugnant, and the office of senator and the office of State Banking Commsisioner being inherently inconsistent and repugnant, it necessarily follows that there was a vacancy created in the office of senator by Speer's acceptance of the office of State Banking Commissioner, and that the circuit court did not err in so holding.

3. The next question is, How is the vacancy to be filled?

Section 1524 of the Kentucky Statutes reads as follows:

"When a vacancy happens in either branch of the General Assembly during its session, the presiding officer of the house in which the vacancy occurs shall issue the writ of election; if the General Assembly is not in session, the writ shall be issued by the Governor."

Since the General Assembly was not in session in June, 1916, when Speer became State Banking Commissioner, a writ of election to chose his successor can be issued only by the Governor. The Governor has not, however, issued a writ of election to fill the vacancy in the senatorship.

Subsection 4 of section 1523 of the Kentucky Statutes provides that no writ for the election of a county officer, a representative or senator, shall be issued, except so as to enable the sheriff to give such notice at least eight days before the election; and by section 152 of the Constitution, a senator may be chosen at a special election.

The General Assembly will not meet in regular session until January 1, 1918; and, if the Governor should call a special session of that body prior to that date, there would be ample time to elect a senator before a called session would convene.

It is insisted, however, by the plaintiff that the committee under the party rule, not only has the right of determining how the nomination shall be made and even make the nomination, but that it may anticipate the call of a special election by the Governor to fill the vacancy in the senatorship, by nominating a candidate for the office of senator immediately upon the creation of the vacancy, regardless of the time when the Governor may call an election to fill the vacancy, and of the fact that he may never call it.

Conceding for the sake of the argument, that the committee has the power under rule 23 to make the nomination, it by no means follows that it can do so before an election has been called to fill the vacancy. The parties seem to be proceeding upon the theory that the vacancy will be filled at the approaching November election. It may be so filled, provided the Governor calls an election for that day. To make an election legal,

there must be a time fixed for holding it, either by law or by the officer empowered by law to do so.

Consequently, should the plaintiff be voted for at the regular November election of this year, without an election having been called by the Governor to fill the vacancy, he would acquire no rights thereunder, although he might receive a majority of the votes. Toney v. Harris, 85 Ky. 453; Wilson v. Brown, 130 Ky. 397; Wooten v. Wheeler, 149 Ky. 62.

A senator for the full term beginning January 1, 1918, will be elected at the regular November election in 1917. If, therefore, there should be no special session of the present General Assembly, there will be no necessity of filling the vacancy, since there would be no service to be performed. So, the election of a senator at this time to fill the vacancy might be a vain thing.

Moreover, it will be assumed, that if there should be an extra session of the present General Assembly, the Governor will call a special election to fill the vacancy, in ample time to enable Speer's successor to participate therein.

The case, therefore, is reduced to this proposition: Can a nominating body name a candidate to fill a vacancy before an election has been called for the filling of the vacancy?

Rule 11 of the Democratic party law reads as follows:

"The State Executive Committee shall have power to determine the mode, manner, time and place of nominating candidates for state offices, except such as are provided for by the primary election law. The basis of representation for the selection of delegates to all conventions shall be the Democratic vote cast at the last presidential election.

"It shall be the duty of said Executive Committee to issue a call for said convention in writing, to the Democratic press of the State, setting forth the time and manner of selecting delegates thereto.

"Said State Executive Committee, or any other committee, shall not call a primary or convention for the nomination of a Democratic candidate or candidates for any office to be filled by a popular vote prior to the first day of November in the year next preceding the year in which the election is to be held for which said candidate is to be voted for."

To illustrate: If the Governor should call a special session of the General Assembly to meet November 15, 1917, and should call a special election for November 1, 1917, as he properly could under the law, to fill this vacancy, clearly the nomination of plaintiff would be invalid under the party law. But, if plaintiff's contention is sound, his nomination could be invalidated under the same party law which he invokes to sustain it.

The illustration shows the soundness of the view that a nomination made before the election has been called is of no validity. The entire proceeding of filling a vacancy contemplates (1) a vacancy, (2) the issuing of a writ of election for a specific date, and (3) nominations of candidates to be voted for, in the order given. Any other view would be an unusual and strained construction never contemplated by the makers of our election laws.

Evidently, the purpose of the party law and all similar provisions, is to require the selection of candidates to be made within a reasonable time before the election.

These provisions, when taken in connection with the fact that an election cannot be held to fill this vacancy unless and until it be called by the Governor, make it plain that it was never intended, either by the primary law or by the Democratic party law, that a nomination to fill a vacancy should or could be made before the special election was called. Otherwise, we would have the anomalous situation of a nominating body naming a candidate far in advance of the election and possibly independent of the issues and questions that might arise thereafter and before the election. The unreasonableness of such a result supports the view that a nomination cannot be made before an election has been called.

In our view, a nomination necessarily pre-supposes an election to be held at a time fixed by law, or by the officer authorized by law to fix it; in this case by the Governor.

It follows, therefore, that since the plaintiff was nominated before a special election was called to fill the vacancy, he acquired nothing thereby, and has no cause of action.

The injunction granted by the circuit judge is dissolved.

Judges Carroll, Thomas, and Clarke, concur.