## MARFA INDEPENDENT SCHOOL DIST. v. DAVIS, County Judge, et al.

### No. 3561.

Court of Civil Appeals of Texas. El Paso.

Feb. 25, 1937.

Rehearing Denied March 4, 1937.

Swearingen & Bledsoe, of Marfa, for appellant.

Frank O. Ray and C. E. Patterson, both of Alpine, and E. B. O'Quinn, of Marfa, for appellees.

HIGGINS, Justice (after stating the case as above).

By the Act of the 42d Legislature, approved May 26, 1931 (chapter 357, p. 849, Reg.Session), article 2688, R.S., was amended so as to read:

"The Commissioners' Court of every county having three thousand (3,000) scholastic population or more as shown by the preceding scholastic census, shall at each General Election provide for the election of a county Superintendent to serve for a term of two (2) years. * * *

"In every county that shall attain three thousand (3,000) scholastic population or

more the Commissioners' Court shall appoint such Superintendent who shall perform the duties of such office until the election and qualification of his successor. In counties having less than three thousand (3,000) scholastic population whenever more than twenty-five per cent (25%) of the qualified voters of said county as shown by the vote for Governor at the preceding General Election shall petition the Commissioners' Court therefor, said Court shall order an election for said county to determine whether or not the office of County Superintendent shall be created in said county; and, if a majority of the qualified property taxpaying voters voting at said election shall vote for the creation of the office of County Superintendent in said county, the Commissioners' Court, at its next regular term after the holding of said election, shall create the office of County Superintendent, and name a County Superintendent who shall qualify under this Chapter and hold such office until the next General Election."

A further provision relates to the appointment of the county superintendent by the county board of education in counties having a population in excess of 350,000, as shown by the last available federal census.

In 1932 the article was again amended (chapter 21, p. 47, Acts 42d Leg. 3d C.S. [Vernon's Ann.Civ.St. art. 2688]). By this amendment the words "two (2) years" in the first sentence were changed to "four (4) years," and a proviso added to the end of the article which reads: "Provided further that in counties having a scholastic population of between three thousand (3,-000) and five thousand (5,000) scholastics, wherein the office of County Superintendent has not been created and a Superintendent elected, then in such counties the question of whether or not such office is established shall be determined by the qualified voters of said county in a special election called therefor by the Commissioners' Court of said county, upon petition therefor as hereinabove specified."

The act of 1931 divided the counties into four classes: (1) Those having 3,000 scholastics or more; (2) those which shall attain 3,000 scholastics or more; (3) those having less than 3,000 scholastics; (4) those having a population in excess of 350,-000 according to the last federal census.

The amendment of 1932 maintained these classifications and added a fifth, viz.: Those "having a scholastic population of between" 3,000 and 5,000 scholastics.

The appellants' theory is that by virtue of the quoted proviso in the amendment of 1932, in counties having or attaining a scholastic population of from 3,-000 to 5,000 scholastics, the office of county superintendent does not exist unless and until an election has been called and held, the question determined, and the office established by the qualified voters of the county.

If that is the effect of the amendment, the office of county superintendent does not exist in any county having less than 5,000 scholastics unless and until such an election has been called and held and the question decided in the affirmative by the voters.

If such was the legislative purpose of the amendment, the obvious, simple, and effective way to plainly evidence and accomplish such purpose would have been to merely change in the act of 1931 the words "three thousand" to "five thousand." This consideration, however, is not decisive of the question, for legislative acts are sometimes awkwardly worded.

Under the literal language of the proviso it applies to counties "having a scholastic population of between" 3,000 and 5,000 scholastics. In 1932 Presidio county did not have that many scholastics, and, if construed literally, the proviso did not apply to that county. Appellants would read into the proviso the words "or attaining," making it read "having or attaining," etc. To read such words into the proviso and otherwise construe it as appellants would have it construed would bring the proviso in conflict with the preceding sections which impose upon the commissioners' court the duty, of its own motion, to call elections for county superintendent in all counties having 3,000 or more scholastics, and in counties attaining such population, of its own motion, to appoint a superintendent to serve until the election and qualification of his successor.

Appellants' theory would condition such authority of the commissioners' court in counties with scholastics of from 3,000 to 5,000 to call an election upon a petition presented to it, as in the case of a county of less than 3,000 scholastics; and such theory would also condition the right of the commissioners' courts in such counties to appoint a superintendent upon the result of such election.

It is a cardinal rule in the interpretation of statutes to harmonize, if possible, apparently conflicting language so as to give effect to all of it and carry out the legislative intent. Citation of authority to this effect is unnecessary.

It seems to us the purpose of the proviso was to provide a method, in counties with light scholastic population of from 3,000 to 5,000 scholastics, in which counties the commissioners' courts for some reason had failed or refused to appoint superintendents and call elections, whereby the qualified voters of such counties could themselves by such election determine that the office was created.

If this interpretation be placed upon the proviso, and we hold such to be the proper one, there is no conflict in the act.

It may be the proviso awkwardly expresses the legislative intent, but that affords no ground for failing to harmonize all of the language of the act and carry into effect the legislative intent. 25 R.C.L., Statutes, § 221.

Upon the views expressed, it follows the judgment should be affirmed.

It is so ordered.