**TERRY et al. v. ADAMS et al.**

Civ. A. No. 1135.

United States District Court
S. D. Texas, Galveston Division.

May 1, 1950.

Allen, Smith, Neal & Lehmann (J. Edwin Smith), of Houston, Texas, for plaintiffs.

Townes & Townes (E. E. Townes and Edgar E. Townes, Jr.), and Clarence I. McFarlane, of Houston, Texas; D. R. Peareson, of Richmond, Texas, for defendants.

KENNERLY, Chief Judge.

This is a suit by John Terry, et al., citizens and residents of Fort Bend County, in this District and Division (for brevity called Plaintiffs), against A. J. Adams, et al., also residents and citizens of Fort Bend County (for brevity called Defendants). Defendants are sued individually and as representatives of the governing body of the Jaybird Democratic Association of Fort Bend County (for brevity called Association), commonly known, and described by Plaintiffs, as the Jaybird Party.

Such Association is a political organization or party. About April, May, or June of each election year, it holds a primary election or elections (called for brevity Jaybird Primary) to determine to what persons such Association will give its endorsement for County and Precinct Officers in Fort Bend County to be voted on in the Democratic Primaries to be held the following July and August. No Negro is allowed to vote in such Jaybird Primary. Plaintiffs, "who are Negroes and qualified voters in such County, bring this suit for themselves and others similarly situated, seeking a Decree declaring that they are legally entitled to vote in such Jaybird Primary, for damages in the sum of Five

Thousand Dollars for being deprived of such right; and enjoining Defendants from refusing to allow them to vote. Particularly they pray that Defendants be enjoined from refusing to allow them to vote in the Jaybird Primaries of May 6, 1950, and June 3, 1950. Defendants have filed a Motion to Dismiss and have Answered, and this is a hearing on such Motion and a trial on the merits.

(a) Counsel for the parties have signed a Stipulation, which was offered by Defendants, which so well states the history and purpose of such Association that I quote it as follows:—

"The matters herein contained are not stipulated by Plaintiffs in the above cause within the sense that Plaintiffs agree thereto but it is agreed that the matters set forth in the following paragraphs may be read by Defendants on any trial or hearing of this cause, as Defendants statements with reference to said matters, the same as though each of said matters hereinafter set forth were introduced into evidence by testimony of witnesses testifying personally; and the Plaintiffs make no objection to the reading of the following paragraphs:

"In seeking to understand the Jaybird Democratic Association of Fort Bend County, Texas, it is necessary to keep in mind conditions throughout the South during the so-called Reconstruction Period, and particularly in those localities like Fort Bend County where the Negroes greatly outnumbered the whites. In the registration of voters from May to September 1867 there were admitted to registry 153 white voters and 1334 colored voters in the county. The State was placed under military rule; county officials were appointed and removed at will under military authority. When military control was discontinued, county and precinct offices were held over by the group theretofore in control, most of the white members of which had come into the county after the War. The colored people, only recently freed, were controlled by the white newcomers.

"The result was a county government of dishonesty, corruption, graft and also of arrogance toward the native white citizens. The county officials were not interested in orderly honest government, the enforcement of law, the prevention of crime or its adequate punishment. The native white people tried by personal persuasion and by appeal, both to the white members of the ruling organization and also to the Negroes, to bring about some betterment of official conditions and conduct, but to no avail.

"Most, if not all, of the white people excluded from participation in voting or political affairs were Democrats. As time passed on and a greater percentage of the Democrats began to be permitted to vote, different groups among them sought to organize and support candidates for office, but without success.

"Finally the condition became so intolerable that the Democrats, joined perhaps by a few good Republican citizens, decided to organize an association of white citizens to be known as the 'Jaybird Democratic Association of Fort Bend County', stating their object thus: 'The object of this association shall be to secure to the people of Fort Bend County economic and honest county government and the election of honest and faithful county officials.' 'Every bona fide white citizen of Fort Bend County shall be eligible to membership in this association.' This was in 1889.

"Throughout the years the membership of the association has, by some method, ascertained whom the majority of its members desired to support for various county and precinct offices. For a period, it determined the preference of its members at mass meetings of the membership, before which mass meetings were placed the names of those who desired to seek office or whose friends desired to present and support them. Later the method was changed to a ballot voting system paralleling in general form and method the system set up by state law for political party government.

"Those candidates selected as preferred by the membership of the Association by whatever method was followed were advised of their selection. The news of the result of voting in the Association was spread by word of mouth, newspapers and any other available news channels.

"With the announcement of the selection of the candidates preferred by the membership of the Association, the organization's connection with the matter terminated."

(b) Another Stipulation of Facts was signed and filed by Counsel for the parties. It is quite lengthy and it seems unnecessary to copy it herein. It is referred to and made a part hereof. Briefly stated, the facts as set forth in the Stipulation and shown by the evidence are as follows:—

(c) The four persons named as Defendants herein are officers of such Association. Such Association is governed by an Executive Committee of twenty-two persons, one from each voting precinct in the County.[1] Such officers are members of such Committee.

(d) The Jaybird Primary and/or Primaries are held on a date or dates fixed by such Committee of such Association each election year, to elect or select the persons who are to and will receive the endorsement of the Association for County and Precinct Officers in Fort Bend County, to be voted on at the Democratic Primary or Primaries to be held in such County in July and August following. Such Jaybird Primary and/or Primaries are held and conducted and persons announce themselves as candidates and become candidates therein in substantially the same way as such Democratic Primaries are held and conducted under the Laws of Texas. Except that more than two consecutive terms for County and Precinct officers are prohibited by such Association and there is no pledge on the ballot at the Jaybird Primary. And further the Executive Committee of such Association does not certify the successful candidates. Such successful candidates must file their own applications for a place on the ballot used in such Democratic Primaries. There are perhaps other minor exceptions.

(e) There is no other organization in Fort Bend County similar to such Association, and generally the persons endorsed in the Jaybird Primary are the only persons whose names appear on the ballot at the Democratic Primaries. And such persons are almost invariably elected or nominated at such Democratic Primaries and their names appear as Democratic Nominees on the official ballot at the General Election in November. The Democratic Nominees are almost invariably elected at such General Election. In other words, an endorsement at the Jaybird Primary generally means an election at the General Election in November. A majority of the white voters in Fort Bend County vote in the Jaybird Primaries, and generally abide by and support in the Democratic Primaries the persons endorsed by the Jaybird Primaries, although such Association has no way of requiring them to do so.

(f) It is perfectly plain that the main and primary object of such Association has been from the beginning of its organization and still is to aid and enable the white voters of Fort Bend County to select and elect the County and Precinct officers of Fort Bend County and to deny the Negro voters any voice or part therein.

 1:—Defendants' Motion to Dismiss is not meritorious. It is clearly shown that the Jaybird Democratic Association is generally known as the Jaybird Party, by which name it is here sued. It is shown that the four Defendants herein are officers of such Association, and it is clear that the service of process on them brings them and such Association into Court under Rules 4(d)(1) and 4(d)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. A. It is also clear that this Court has jurisdiction of this case under Sections 31, 43 and 47, Title 8 U.S.C.A., and Sections 1331 and 1343, Title 28 U.S.C.A., Judiciary

---

1. Paragraph IV of the Stipulation is as follows:—

"The Jaybird Democratic Association of Fort Bend County, Texas, has an Executive Committee. To provide representation thereon to all portions of Fort Bend County, the Committee is composed of 22 persons, each selected by the members of the Association resident in the 22 respective voting precincts of the Association.

"Defendant A. J. Adams is President, George Lane is Vice-President and Mrs. Mattye Schulze is Secretary of the Association and said defendants, together with defendant R. M. Darst, are each members of the Executive Committee."

and Judicial Procedure, effective September 1, 1948.

■■■■ 2:—Plaintiffs sue for themselves and for others similarly situated, claiming this to be a class suit. Plaintiffs also allege that Defendants are sued individually and as representatives of a class, "such class being the governing body and officials of the Jaybird Party." They say that such class is so numerous as to make it impracticable to bring all of them before the Court, etc. Clearly Plaintiffs may see for themselves and for those similarly situated, and as stated Plaintiffs' pleadings and the process issued and served herein and Defendants' Answer bring Defendants and such Association into Court. But the evidence shows that the Governing Body of such Association is an Executive Committee of twenty-two members, Defendants herein being four of such twenty-two members. I do not think that the members of such Executive Committee other than the four Defendants here sued are in Court. Only such Four Defendants and such Association are here.

3:—During the last quarter of a century, the question of the right of Negroes under the Constitution of the United States to vote in political party elections or primaries such as the one in question here, has many times been before the Courts of Texas, both State and Federal. Also before the various Federal Courts of Appeals and the Supreme Court of the United States. Counsel for the parties cite many, but not all, the cases,[2] some of which are in point and some are not.

4:—Defendants contend that such Association is a self-governing voluntary association or club, and not a political party nor a creature or agency of the State of Texas. They also contend that there is no law of Texas regulating it, and that it has the legal and inherent right to prescribe who shall be its members and who shall vote in its primaries, and to exclude negroes from its membership and from voting in its primaries. Defendants cite and stand upon Drake v. Executive Committee, D.C., 2 F.Supp. 486, decided by this Court in 1933. In that case, it was held that there was no law of Texas which regulated or controlled the Democratic Party of the City of Houston nor its Executive Committee in the matter of holding Primary Elections in Houston for nominating City Officers. And that such party in Houston and its Committee had the inherent right to say who should vote in such City Primaries.

But Counsel overlook some recent cases in which the Law is held to be to the contrary. In the State of South Carolina, after the decision of the Supreme Court in Smith v. Allwright, supra, the Legislature of that State repealed all primary election laws regulating political parties, yet in Rice v. Elmore, 4 Cir., 165 F.2d 387, it was held that negroes were legally entitled to vote in the Democratic primaries of South Carolina held and controlled by the Democratic Party. The Supreme Court refused Certiorari, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151. See also Baskin v. Brown, 4 Cir., 174 F.2d 391.

2. Baskin v. Brown, 4 Cir., 174 F.2d 391; Chapman v. King, 5 Cir., 154 F.2d 460; Cooper v. Cartwright, 200 Okl. 456, 195 P.2d 290; Davis v. Schnell, D.C., 81 F.Supp. 872; Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292; Hall v. Nagel, 5 Cir., 154 F.2d 931; Harrell v. Sullivan, 220 Ind. 108, 40 N.E.2d 115, 41 N.E.2d 354, 140 A.L.R. 455. Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Mitchell v. Wright, 5 Cir., 154 F.2d 924; Newberry v. United States, 256 U.S. 232, 263, 41 S.Ct. 469, 476, 65 L.Ed. 913; Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L. Ed. 984, 88 A.L.R. 458; Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759; Rice v. Elmore, 4 Cir., 165 F.2d 387; Seay v. Latham, 143 Tex. 1, 182 S.W.2d 251, 155 A.L.R. 180; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Waples v. Marrast, 108 Tex. 5, 184 S.W. 180, L.R.A.1917A, 253; Drake v. Executive Committee, D.C., 2 F.Supp. 486; White v. Executive Committee, 5 Cir., 60 F.2d 973; State ex rel. Cline v. Norris, Tex.Civ. App., 33 S.W.2d 850; Perry v. Cyhers (Eastern District of Texas), Not Reported.

5:—But I do not agree with Defendants' contention that such Association is not a political party, nor that it is not regulated by the Laws of Texas, nor that it is not an agency of the State. Such Association is a political party and comes clearly within the terms of Article 3163, Vernon's Texas Civil Statutes [3] which regulates it and makes it an agency of the State. All that is said by this Court in White v. Executive Committee, 5 Cir., 60 F.2d 973, which Defendants also cite, is applicable here. Such Association cannot avoid the effect of Article 3163 by holding its primaries on a date different from the date fixed by such Article, nor by different methods.

While in the case of Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680, the Supreme Court of the United States held exactly the opposite to what is held by this Court in White v. Executive Committee, the Supreme Court more recently in Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110, overruled Grovey v. Townsend, and in effect sustained the view set forth by this Court in White v. Executive Committee.

6:—My conclusion is:—

(a) That Plaintiffs are entitled to Judgment, declaring that Plaintiffs and those similarly situated and for whom Plaintiffs sue, are legally entitled to vote in the Jaybird Primary and/or Primaries held by such Association and specifically those to be held May 6, 1950, and June 3, 1950.

(b) Plaintiffs have waived their claim for damages.

(c) Injunction should not issue enjoining the four Defendants sued herein, to-wit, A. J. Adams, George Lane, Mrs. Mattye Schulze, and R. M. Darst, and the Jaybird Democratic Association of Fort Bend County, from refusing to allow Plaintiffs to vote in such Jaybird Primaries. The evidence as stated shows that the affairs of such Association are in the hands of an Executive Committee of twenty-two persons, and not in the hands of the four Defendants who are parties to this suit. They do not have the power to either allow or not allow Plaintiffs to vote. That power is in such Executive Committee.

Let appropriate Decree be drawn and presented in accordance herewith.

3. Such Article is as follows:—

"Any political party without a State organization desiring to nominate candidates for county and precinct offices only may nominate such candidates therefor under the provisions of this title by primary elections or by a county convention held on the legal primary election day, which convention shall be composed of delegates from various election precincts in said county, elected therein at primary conventions held in such precincts between the hours of eight a. m. and ten p. m. of the preceding Saturday. All nominations made by any such parties shall be certified to the county clerk by the chairman of the county committee of such party, and, after taking the same course as nominations of other parties so certified, shall be printed on the official ballot in a separate column, headed by the name of the party; provided, a written application for such printing shall have been made to the county judge, signed and sworn to by three per cent of the entire vote cast in such county at the last general election."