ALVIN H. LANE ET AL V. HONORABLE JACK ROSS, SECRETARY OF STATE ET AL.

No. A-3673. Decided May 28, 1952.
(249 S.W. 2d Series, 591.)

*Alvin H. Lane, Golden & Burrow* and *Irion, Cain, Bergman & Hickerson,* all of Dallas, and *Louis Scott Wilkerson,* of Austin, for relators.

*Neil E. Beaton,* of San Antonio, *J. H. Schleyer,* of New Braunfels, *Howell Ward,* of Corpus Christi, *Enoch Fletcher,* of Grand Saline, *Nat Friedman* and *Tom Moshiem,* both of Houston, for Intervenors opposing the issuance of the writ of mandamus and injunction.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

The relators, alleging that they are severally duly elected delegates from the counties of Dallas, Tarrant, Harris, Nueces, Galveston and Travis to the Republican State Convention to be held in Mineral Wells, May 27, 1952, for the purpose of selecting delegates to the National Convention of the Republican Party, seek by their petition filed directly in this court to have issued to respondent, Ross, Secretary of State, writs of mandamus and injunction.

Relators allege that they were severally the permanent chairmen of the County Conventions of the Republican Party duly and legally called and held in the six named counties pursuant to the provisions and requirements of Art. 235 of the Election Code of the State of Texas (being Election Code, Article 13.58, Vernon's Texas Statutes, 1952 Supplement) ; that as such chairmen they signed and filed with the respondent, Ross, returns of such conventions and lists of delegates to the State Convention there selected, and that accordingly they and those whose names appear as delegates on the lists filed by them "have a legal right" to exercise their functions and perform their duties as "legally elected" delegates to the State Convention "free from any impairment of or challenge to such right by any other person claiming to be a delegate" by virtue of election at any other convention.

Relators further allege that the respondent Ross has received and filed another set of returns and list of delegates from each of the six named counties, which returns and lists are illegal for various reasons, and that "unless restrained and enjoined by this court, the defendant (respondent) will transmit one copy of the aforementioned illegal returns to the Chairman of the Republican State Executive Committee, and the delegates named in said illegal returns will then be placed upon the roll of the Republican State Convention." Relators allege further that a majority of the members of the Republican State Executive Committee have openly avowed that they will not recognize relators but will, on the contrary, recognize and place on the convention roll as delegates those who were selected at the competing conventions.

Relators pray in their petition that the respondent "be ordered and commanded not to transmit to the Chairman of the Republican Executive Committee" the competing minutes and returns of election of delegates "and that the respondent be ordered to transmit the original of the minutes and returns" signed by relators.

The respondent has not answered the petition but the Chairman and Secretary of the Republican State Executive Committee have filed a sworn intervention in which they deny the allegations in the petition and specifically assert that the Committee will decide the contests between competing delegations "in accordance with law and the rules and the customs and usages of the Republican Party in Texas" and that each contest will "have to be adjudged on its individual merits." The intervenors, by special exception and otherwise, offer several reasons why relators' petition should not be granted, only two of which we will notice and both of which we must sustain. They are as follows: (1) That the relief sought by relators is essentially injunctive and this court has no jurisdiction to grant such relief; and (2) That the duties of the Secretary of State in the premises are purely ministerial and that it is his duty to forward to the Chairman of the State Executive Committee all returns filed with him, leaving to the State Executive Committee the duty of determining which of the competing groups of delegates shall be placed on the Convention temporary roll of delegates.

1 (1) It was admitted in argument before the court that unless restrained therefrom the Secretary of State proposed to and would forward to the Chairman of the Republican State Executive Committee the returns and lists of delegates filed

by relators and those filed by the competing groups. It thus appears that there is no need for a writ of mandamus to compel the forwarding of relators' lists; the lists will be forwarded anyway. A writ of mandamus will not issue to compel an officer to do that which he is willing to do and intends to do. Ferguson v. Huggins, et al, 122 Texas 95, 52 S.W. 2d 904; State ex rel. Candler v. Court of Civil Appeals, Fourth Supreme Judicial District, et al, 123 Texas 549, 75 S.W. 2d 253.

**2** Since no writ of mandamus will issue to compel the forwarding of relators' lists of delegates, the only remaining relief sought by relators is purely injunctive. According to their prayer it is that the respondent "be ordered and commanded not to transmit * * * minutes and returns of election of delegates * * * other than the minutes and returns signed" by relators. It is well settled that this court has no original jurisdiction to issue a writ of injunction. Article V, Section 3, Constitution of Texas; Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515, 519, 70 A. L. R. 1484; Texas Employers' Ins. Ass'n. v. Kirby, et al, 137 Texas 106, 152 S.W. 2d 1073, and cases therein cited. Nor can the Legislature, in violation of the constitutional provision, confer such power upon this court as relators claim Art 1735, V.A.C.S. confers. Love v. Wilcox, supra. In cases in which this court's jurisdiction to issue a writ of mandamus has attached the court necessarily has the correlative authority to issue a writ of injunction to make the writ of mandamus effective. Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063,1068. Writs of injunction were issued in the cases of Love vs. Wilcox, supra, and Seay et al v. Latham, 143 Texas 1, 182 S.W. 2d 251, 155 A. L. R. 180, but only after the parties had shown themselves to be entitled to a writ of mandamus and only to make effective the judgment awarding the writ of mandamus.

**3** (2) We have concluded that the filing with the Secretary of State of competing sets of returns and lists of delegates from the six counties created contests between such competing delegates for the right to be placed upon the State Convention's temporary roll of delegates with the ensuing right of participating in the temporary organization of the convention. But it is relators' position that under Art. 235 of the Election Code the duty devolves upon the Secretary of State to decide the contests, and, if necessary to that end, to take testimony for the purpose of determining which of the competing lists of delegates is entitled to be transmitted to the Chairman of the State Executive Committee. With this contention we cannot agree. Art. 235 does not grant to the Secretary of State any such power by ex-

press provision. Neither does it imply such power. On the contrary, Art. 220 of the Election Code directs that "Except for a place on party tickets for public elective offices, all contests within a political party shall be decided by the State, district, or county executive committee, as the nature of the office may require, each such committee to retain all such powers and authority now conferred by law."

Article 220 of the Election Code was formerly Art. 3146 of our statutes. Under that article it was settled by decisions of this court that delegates to the state convention of a political party are not "public elective officers" and that contests for such places were to be decided by the appropriate executive committee. Wall et al v. Currie, 147 Texas 127, 213 S.W. 2d 816; Carter v. Tomlinson, 149 Texas 7, 227 S.W. 2d 795. It certainly cannot be contended that such delegates are candidates "for a place *on party tickets for public elective offices*" within the meaning of Art. 220 of the Election Code. (Emphasis ours).

**4** It is a well settled and fundamental rule of law that when the Legislature re-enacts a statute in identical wording after it has been construed by the courts, the court's construction of the statute is also adopted and confirmed. Hart v. Winsett, 141 Texas 312, 171 S.W. 2d 853; Cunningham v. Cunningham, 120 Texas 491, 40 S.W. 2d 46, 75 A.L.R. 1305. It follows that there can be no escape from the holding that by the enactment of Article 220 of the Election Code in the exact language of Article 3146 the Legislature intended to leave jurisdiction to settle contests for party office, in the first instance, to the parties' executive committees.

**5** The provisions of the Dicker bill (Arts. 3154a—3158a, V.A.C.S.) do not supersede Arts. 220 and 235 of the Election Code. In practical effect these articles of the statutes apply to the Republican Party only but they must be interpreted in the light of the Election Code and harmonized therewith so as to resolve apparent conflicts and so as to give effect to all provisions of each. Martin v. Sheppard et al, 129 Texas 110, 102 S.W. 2d 1036; Marfa Ind. School Dist. v. Davis, Tex. Civ. App., 102 S.W. 2d 283 (writ ref.). If Art. 3154a which makes the Republican Party "subject to the jurisdiction of the courts of this State for non-compliance with, or violation of relevant Civil and Penal statutes governing general, special and primary elections and conventions" is constitutional, which point we do not decide, but for the purpose of this case only assume, its provisions may be harmonized with those of Art. 220 of the Elec-

tion Code by holding that all party contests shall be tried in the first instance by the appropriate party executive committee with the right to appeal to an appropriate court for redress against unlawful acts on the part of such committee.

This opinion is handed down as of May 21, 1952 to carry into effect the order of the Court entered on said date denying relators the relief sought by them, and on account of the fact that at such time the date for holding the Republican State Convention was near at hand, the relators were denied the right to file a motion for rehearing, Rule 515, Texas Rules of Civil Procedure.

Opinion delivered May 28, 1952.

MR. JUSTICE WILSON, joined by CHIEF JUSTICE HICKMAN AND JUSTICES GARWOOD AND SMITH, dissenting.

We respectfully dissent from the decision of the majority for the reason that this Court does have jurisdiction to grant the relief prayed for *if* the Secretary of State's duty is to forward one and only one list of delegates. Since the majority opinion holds that this Court has no jurisdiction we will limit this dissent to that question as the other point discussed in the majority opinion is unnecessary to our judgment.

This Court derives its power and responsibility in this matter from the following language of Sec. 3 of Art. V of our Texas Constitution:

"* * * The Supreme Court and the Justices thereof shall have power to issue writs of habeas corpus, as may be prescribed by law, and under such regulations as may be prescribed by law, the said courts and the Justices thereof may issue the writs of mandamus, procedendo, certiorari and such other writs, as may be necessary to enforce its jurisdiction. The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State."

It is clear from this that we have no power to issue an original injunction except where it is in aid of jurisdiction already conferred by some other constitutional provision. Our problem becomes whether the action prayed for by relators can be accomplished by the writ of mandamus. We believe that the words *writ of mandamus* mean the power to compel a state

official to do his duty and not the common law form of action known as mandamus.

We are in agreement that if the Secretary of State had refused to forward relators' convention reports this Court under mandamus would have jurisdiction. We also agree that we could command the Secretary of State to forward one and not the other. Love v. Wilcox, 119 Texas 256, 28 S. W. 2d. 515; Seay v. Latham, 143 Texas 1, 182 S. W. 2d. 251, 155 A. L. R. 180. We disagree over the remedy used in Love v. Wilcox, supra, and Seay v. Latham, supra. The majority hold that what this Court did in those cases was to mandamus the sending forward of one list of electors and to enjoin the Secretary of State from forwarding the other list and that since the injunction was in aid of the jurisdiction to mandamus, it was constitutional. We think that, to the contrary, there was just one command and that the entire command was issued as a mandamus. (1)

High defines mandamus as:

"The modern writ of mandamus may be defined as a command issuing from a common-law court of competent jurisdiction, in the name of the state or sovereign, directed to some * * *, officer, * * *, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law." *High's Extraordinary Legal Remedies* (Second Ed.) p. 4.

---

(1) There has never been such a rigid distinction between mandamus and injunction as the majority asserts. The legal writ of mandamus originated as a form of action for making effective the King's prerogative and is more ancient than the injunction. Its function has varied considerably from century to century. As the common law grew, the various writs acquired a formal wording. The courts developed the habit of measuring legal rights in terms of the writs available to enforce them. From this grew the common-law theory of actions that there was no right of action unless there was a recognized form of writ by which it could be enforced. The majority opinion forces us into that same attitude of measuring our jurisdiction by the definition of a procedural writ. *Foundation of Legal Liability*, Street, Vol. III, ch. 3.

At common law both in England and in parts of the United States a mandamus suit was begun by the issuance of a writ commanding the official either to do his duty or show cause for not doing so, which first writ was known as the "alternative mandamus." If the official refused to conform to the demand he had available several different pleas. If he filed an answer negativing the factual basis for the issuance of the writ, the Court would deny the writ. Then the parties might try the truth or falsity of the factual answer in the form of an action for damages. If this should result in a finding that the factual answer was false, a writ issued commanding the official to perform his duty. As has been pointed

By the words "writs of quo warranto and mandamus" our Constitution did not bring into our practice the common law form of action of mandamus prevalent in both England and the United States at the time. This clause of the Constitution was not an attempt to regulate pleading or procedure but was a grant of power and responsibility to this Court for the purpose of securing a speedy and final adjudication of important public questions. The constitutional words *writ of mandamus* mean power of mandamus, and the procedure for exercising that power can be determined in statutes and court rules.

The functions of both mandamus and injunction have over-lapped in the past and an examination of the long history of both demonstrates that there has always been a borderland of over-lapping functions. Yett v. Cook, 115 Texas 175, 268 S.W. 715, and 281 S.W. 843. This Court has in the past used its original jurisdiction of mandamus to restrict a public official from il-legally performing his duty. In Seagraves v. Green, Com. App. opinion adopted, 116 Texas 220, 288 S. W. 417, the Court said:

"While mandamus, in general is a remedy whereby a person or officer is required to do something which he wrongfully de-clines to do, nevertheless in exceptional cases it may properly be given a restraining effect (Bacon's Abr. tit. 'Mandamus,' D, 273; Ex parte Bradley 7 Wall. 364, 19 L. Ed. 214, 219), or one of reversal or amendment of a previous act (see Ex parte Secombe, 19 How. 13, 15 L. Ed. 565; Virginia v. Rives, 100 U.S. 313, 25 L. Ed. 667; Yett v. Cook, 115 Texas 175, 268 S. W. 715, 281 S. W. 843, and authorities there cited.

We do not think that the following statement from the ma-jority opinion is correct.

---

out in *Townes Texas Pleading*, 2d Ed. p. 570, this form of action was wholly in-consistent with the Texas form of pleading by petition and answer adopted in 1840. Of the various writs used in a mandamus action Judge Townes said:

"* * * That they came under the terms of the act rejecting the common law pleading seems equally clear. Notwithstanding this our courts, on the one hand, have refused to apply to these cases the simple system adopted in ordinary litiga-tion; on the other hand have denied that the 'ancient common law procedure' is to be followed in all respects, and the result is no small amount of uncertainty as to the proper method of procedure. * * *"

The word "writ" as used at the Texas bar has always been a reference more to a form of remedy than a document with a set wording used by the clerk to convey the court's command to an officer.

"* * * Writs of injunction were issued in the cases of Love v. Wilcox, supra, and Seay et al v. Latham, 143 Texas 1, 182 S. W. 2d 251 (155 A.L.R. 180) but only after the parties had shown themselves to be entitled to a writ of mandamus and only to make effective the judgment awarding the writ of mandamus."

An examination of the entire judgment of this Court in both Love v. Wilcox and Seay v. Latham shows that in Love v. Wilcox our clerk was ordered to "Issue a peremptory writ of mandamus * * * commanding and requiring said respondents to proceed with their statutory duties as though the resolutions of February 1, 1930, had not been adopted and specifically commanding said respondents and each of them *to desist and refrain* from enforcing said resolutions in certifying names of candidates for the 1930 Democratic primaries * * *." (Emphasis added.) In Seay v. Latham our clerk was ordered to issue a peremptory writ of mandamus "commanding and requiring him to * * * to certify * * * the names of the twenty-three nominees selected and approved by the Democratic Party at its September convention, *and no others*, as the nominees of the Party for presidential electors * * *." (Emphasis added.) Nothing is said in either of these judgments about a writ of injunction. To think in terms of the need for two separate writs is a reversion to the rigid formulism of the early common law. The following language from Love v. Wilcox clearly shows that the court considered that our remedy at mandamus could include a command to cease and desist:

"* * * the law entitles relator to the relief he seeks to the extent of awarding to him a mandamus, commanding and requiring respondents to proceed with their statutory duties * * * and specifically commanding respondents and each of them to desist and refrain from enforcing said resolutions * * *."

These three cases should be authority for defining our jurisdiction under mandamus as including both the positive and the negative of the same command—in this instance, to forward only one list of delegates. In other words, the command to forward one list only "and no other" does not require the issuance of two writs (mandamus and injunction) but can be achieved by mandamus alone.

Therefore we think it is our responsibility to take jurisdiction in the present case under the power to mandamus as that power has heretofore been defined by this court *if* the Secretary

of State's duty is to forward only one report from each county. If a breach of this duty is subject to mandamus, the Secretary of State should not be able to avoid the writ by complying with the positive and refusing to comply with the negative side of the same duty. We would hold that when the breach of an indivisible duty falls within the field of our jurisdiction under the writ of mandamus the whole of that duty and not just part of it is within our jurisdiction.

In drawing a formulistic distinction between two writs so as to defeat our jurisdiction in this case the majority is within the well established and ancient legal tradition that the courts allow private organizations to work out their own internal difficulties. In recent years the trend of the court decisions has been to remove political parties from the status of private organizations. The Legislature could impose no higher duty upon the courts than to keep pure our democratic processes. This Supreme Court is one of the most stable elements in our State Government and in our opinion our jurisdiction and power should not be so narrowly limited by giving the word mandamus in our State Constitution such a restricted definition.

Since the majority opinion is a decision that this Court lacks jurisdiction to decide the merits of the case, the Court plainly has no authority to proceed to decide the merits. The statements in the majority opinion on points other than jurisdiction are therefore no more than dicta and any such statements on our part would serve no proper purpose. We therefore express no opinion except upon jurisdiction.

Justices Hickman, Garwood and Smith join in this dissent.

Opinion delivered May 28, 1952.