**UNITED STATES FIDELITY AND GUARANTY COMPANY, Petitioner,**

**v.**

**Oliver LONDON, Respondent.**

**No. A-9601.**

Supreme Court of Texas.

March 4, 1964.

Rehearing Denied June 17, 1964.

Kenley, Ritter & Boyland and Neal A. Hawthorn, Longview, for petitioner.

Gallagher, Francis, Bean, Wilson & Berry, Dallas, Florence, Garrison & Holt,

Gilmer, Baldwin & Baldwin, Marshall, for respondent.

GRIFFIN, Justice.

Respondent, as plaintiff in the trial court, filed a suit under the Workmen's Compensation Act, against petitioner, as defendant and compensation insurance carrier of plaintiff's employer, alleging that he had suffered total disability from an injury received in the course of plaintiff's employment as the result of an accidental injury to plaintiff's left leg and right and left hands. Plaintiff, by a trial amendment, in the alternative pleaded that he received injury to specific members of his body, to-wit: to his left leg and to his right and left hands.

With regard to the disability resulting from the injuries to the three specific members of plaintiff's body, the trial court submitted similar issues regarding each member. First, the court inquired if plaintiff "sustained any total loss of the use of his left leg following the injury." The jury answered, "yes."

Next the court inquired as to the "duration, if any, of such total loss." The jury was instructed to answer, "Permanent" or "by giving the number of weeks," or "None." To these issues the jury answered 60 weeks' total loss of use of the left leg; 59 weeks' total loss of use of plaintiff's right hand; and 59 weeks' total loss of use of plaintiff's left hand. Therefore the total loss of use of each of the three members was found to be "temporary" rather than "permanent."

In its answer to the issues submitted with regard to the specific injuries the jury found that plaintiff had suffered permanent partial disability of a definite percentage as to his left leg; his right hand; and to his left hand.

The jury's answer to other special issues confined his disability solely to his specific injuries, consequently there is no question of a general injury recovery in this case. No complaint was made of these findings and the denial of recovery by plaintiff for general injuries.

The parties stipulated that the period for temporary total loss of use of each of the three members was 59 weeks for each member.

In rendering judgment for plaintiff's temporary total loss of use of the specific members, the trial court refused to cumulate the total loss of use of each specific member, and rendered judgment only for 59 weeks' total loss of use at the maximum rate of $35.00 per week. The court cumulated the permanent partial disabilities for the length of time and at the percentage of disability found by the jury. Petitioner does not complain in this court of the cumulative award for permanent partial disabilities, therefore, we do not have this question before us and assume, without deciding, that the trial court's action was correct.

The Court of Civil Appeals reformed and affirmed the trial court's judgment so as to award plaintiff recovery for each temporary total loss of use, thus cumulating the recovery for the temporary total loss of use of three specific members. 366 S.W.2d 263.

The Court of Civil Appeals based its judgment upon the wording of the last clause of the following paragraph found in Article 8306, Section 12, Vernon's Texas Civil Statutes, reading as follows:

"Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; *but this Section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one (1) member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.*"

All emphasis in this opinion is that of this Court unless otherwise indicated.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Defendant, as petitioner in this Court, by its first three points of error attacks the allowance by the Court of Civil Appeals of three separate periods of total loss of use of the specific members of plaintiff's body, viz: 60 weeks for left leg; 59 weeks for right hand; and 59 weeks for left hand. In its Application for Writ of Error defendant says: "Simply stated, the question before the court is the amount of compensation respondent (plaintiff) should receive for the 59-week period following his accident, a period of time when he was totally disabled and suffered from total loss of use of three specific members of his body."

Respondent claims that although the record shows only 59 weeks' total loss of the use of each of the three specific members, when you add this temporary total loss to the permanent partial loss of use of each of the three members, you have a permanent loss of use for each of the three members, and that the Court of Civil Appeals was correct in cumulating the recovery for the total loss of use.

The question must be solved by the language of the paragraph from Article 8306, § 12, quoted above. The facts establish that each member was injured as the result of only one accident, and that the incapacities to each member were concurrent. The 59 weeks' total loss of use to each of the three members covered the same 59 weeks of elapsed time.

In the case of Texas Employers Insurance Association v. Patterson (1946), 144 Tex. 573, 192 S.W.2d 255, the employee alleged that he had suffered the total and permanent loss of use of the fingers, his thumb, and of the hand and arm. The jury found plaintiff suffered the total loss of use of each of the three fingers for twelve weeks, followed by a partial loss of use of each of the three fingers for 26 weeks, and the percentage of the partial loss was 50%. The trial court

rendered judgment on the verdict. On appeal the Court of Civil Appeals reversed the case for failure of the trial court to submit affirmatively and unconditionally a part of plaintiff's cause of action. This action was affirmed by the Supreme Court.

The trial court's judgment awarded to plaintiff cumulative compensation for the loss of the use of the three fingers. The Court of Civil Appeals did not pass on that point. Upon appeal to this Court it was held that because the total loss of use of the fingers was only temporary (for 12 weeks) that it was error to award cumulative compensation for such loss of use; that plaintiff should recover only for the longest period of incapacity resulting from such temporary total loss of use of the three fingers, plus 26 weeks of 50% partial loss of the use of the three fingers for one period only. Recovery was limited to 38 weeks, being for the temporary loss of use of only one finger.

Discussing that part of Article 8306, § 12, which we have quoted above, this Court said:

"The payment, contemplated by the statute, for temporary loss of use of a member of the body is compensation for incapacity and is measured by the duration of the incapacity. When, as in the instant case, an employee suffers concurrent injuries, here injuries to three of his fingers, resulting in concurrent temporary incapacities and he is paid for the injury that has caused the longest period of incapacity, his compensation has been measured by, and payment has been made for, the full period of incapacity caused by the injuries. The weekly payments, if cumulated, would continue well beyond the period of the concurrent incapacities.

"The last part of the paragraph of Section 12 above quoted applies, in our opinion, to permanent loss and permanent loss of use, and not to temporary loss of use, because of the use of the

words 'loss or the loss of the use' with no reference to temporary loss of use, and because that portion of the paragraph speaks of the loss or the loss of the use of more than one member 'for which member compensation is provided in this schedule.' The schedule sets out definite compensation for the loss of different members of the body, that is, payments for a specified number of weeks for the loss of each member listed in the schedule, which payments are to be made for the full number of weeks specified, and without reference to any period of incapacity. There is no schedule of payments for temporary losses of use. Compensation for them is measured, as has been said, by the duration of the incapacity." 192 S.W. 2d p. 259, 2d col. (9, 10) and (11).

In the case of Texas Employers Insurance Association v. Hollingshead, 1955, Tex.Civ.App., 282 S.W.2d 305, writ refused, plaintiff Hollingshead sued for compensation for injuries of a general nature resulting in total and permanent disability to perform labor. He also sought recovery for specific injuries to his right and left legs, resulting in the total loss of the use of both legs. The jury found that plaintiff suffered a temporary loss of the use of his legs; that he suffered total loss of the use of his right leg for 100 weeks; total loss of use of his left leg for 100 weeks; and a partial loss of use of his left leg to the extent of 20% for an additional 150 weeks. The trial court's judgment cumulated or added together the total number of weeks of loss of use suffered to both legs as found by the jury and granted compensation therefor.

On appeal the Court of Civil Appeals reversed and rendered judgment for plaintiff to recover compensation only for the 100 weeks' loss of use of his left leg, plus a recovery for 20% partial loss of use of that leg for the 150 weeks as found by the jury.

The Court of Civil Appeals followed the case of Texas Employers Insurance Association v. Patterson, supra. Among other things the Court of Civil Appeals said:

"The pleadings and evidence show that the injuries to appellee's legs were concurrent injuries. By the term of the above statute appellee was entitled to receive compensation only for the injury which produced the longest period of incapacity. The injury to appellee's left leg which produced 100 weeks 'loss of the use' and twenty per cent partial 'loss of the use' for 150 weeks was temporary and was a longer period of incapacity than the 100 weeks 'loss of the use' of his right leg. He was therefore entitled to receive compensation only for the incapacity caused by the injury to his left leg, and the court erred in allowing compensation for the injury to his right leg.

"We cannot agree with appellee's contention that the determination of this case is controlled by the latter portion of the above quoted statute [Art. 8306, § 12] which provides that 'this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member * * *.'"

■■ We construe the paragraph of § 12, Art. 8306 we have before us, so that the first clause thereof applies to temporary loss or loss of use of specific members resulting from injuries received in one accident so that such concurrent incapacities may not be cumulated, but the employee receives "compensation only for the injury which produces the longest period of incapacity." The last clause of this paragraph (and which we have italicized in our quotation of this paragraph) has application only to total loss, to permanent partial loss, or the permanent total loss of use of a specific member, or members. As to such incapacities which are permanent, the employee shall be entitled to cumulate the recovery of compensation as to time and not concurrent.

Under the facts of this case, and our construction of the statute, we do not reach the problem of compensation being payable for longer than 401 weeks. We reserve the decision of that question until it is properly before us and determinative of the result.

Respondent relies on some language in the case of Tex. Emp. Ins. Ass'n v. Maledon, 1930, Comm. of App., 27 S.W.2d 151 to support the Court of Civil Appeals holding.

The language of the court shows that the court was not speaking of specific injuries to two or more specific members, but only of one injury to one specific member of the body concurring for a part of the time with a general injury. The court allowed only for a period of "total disability" (as the court designated temporary total loss of use for 20 weeks) to the hand, plus the permanent partial incapacity to the hand for 131 weeks (being the balance of the statutory schedule of 150 weeks for total loss of a hand). Neither concurrent injuries nor concurrent disabilities of a specific member were present in that case.

Respondent also relies on the case of Tex. Emp. Ins. Ass'n v. Brownlee (1953), 152 Tex. 247, 256 S.W.2d 76, to support the cumulation of recovery allowed by the Court of Civil Appeals. That case was one which involved the point of whether or not the plaintiff's injury to the second and third fingers of his right hand extended to and affected his right hand so as to entitle plaintiff to a recovery for 50% permanent loss of use of his right hand. Both courts below had awarded recovery for compensation for the loss of the use of his right hand. The question of cumulation of recovery was not raised or discussed in this court's opinion. This Court held there was no evidence sustaining the jury finding that the injuries sustained by respondent extended to the hand. Therefore the court reversed the judgments of the courts below and rendered judgment for the amount agreed upon between the parties for the partial loss of use of the two fingers.

Plaintiff also relies on the case of Travelers Ins. Co. v. Theriot, 1962, Tex.Civ. App., 353 S.W.2d 511, writ refused, as authority to sustain his contention. That case is not in point in the case at bar. The employee had sustained two separate hernias as a result of one accident suffered March 31, 1960. The trial court had awarded 26 weeks for each hernia. The Court of Civil Appeals affirmed this judgment. In affirming, the Court of Civil Appeals held that each hernia was a specific injury, for which the Legislature has scheduled a maximum of 26 weeks' compensation to be paid. Therefore, if an employee has suffered two hernias, he is entitled to receive pay for 52 weeks.

Plaintiff relies on the case of Griffith v. Goforth, 1946, 184 Tenn. 56, 195 S.W.2d 33, to sustain his contention that we should cumulate the temporary total loss of use of each of the three specific members. The Goforth case is not in point in the present case. It is based on the Tennessee Compensation Statute, which reads differently from ours. That the court did not hold the disabilities should be cumulative is clearly shown by its language.

> "We cannot conceive that it was the intention of the Legislature, in making the schedule as found under subsection (c) [the specific injury schedule], to permit an injured employee to pyramid separate and distinct injuries to different members of his body, adding together the number of weeks for permanent partial disability to each member, until the total has aggregated 692 weeks, and be paid $12,565 as compensation therefor." [From 6, 7, 1st col. p. 37 of 195 S.W.2d].

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

CULVER, WALKER and GREENHILL, JJ., join in this opinion.

NORVELL, J., concurs with written opinion.

CALVERT, C. J., dissents and is joined by HAMILTON and STEAKLEY, JJ.

SMITH, J., dissents.

NORVELL, Justice (concurring).

I am in agreement with the opinion of Mr. Justice GRIFFIN. However, the dissent of the Chief Justice raises certain matters which may properly be discussed. The conclusion is expressed in this dissent that the two clauses of the paragraph in question [1] are utterly incompatible and repugnant and hence the entire paragraph should be declared meaningless and void.

To me this is a stare decisis case and "we do not write on a clean slate." Massachusetts v. United States, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968. Much of what was recently said by us in Moss v. Gibbs, Tex.Sup., 370 S.W.2d 452 (1963) has application here.

Texas Employers Ins. Ass'n v. Patterson, 144 Tex. 573, 192 S.W.2d 255 (1946), is a decision of this Court and an application for writ of error was refused by this Court in Texas Employers Ins. Ass'n v. Hollingshead, Tex.Civ.App., 282 S.W.2d 305 (1955). Since these decisions, the paragraph here involved was re-enacted as a part of Article 8306, § 12, Vernon's Ann.Tex.Stats. with no change in wording. Acts 1957, 55th Leg., Reg. Session, Ch. 397, p. 1186. It is a recognized rule of general application that when a statute which has been construed by the court of last resort, is re-enacted without substantial change of verbiage, the court's construction of the statute is adopted and confirmed. Lane v. Ross, 151 Tex. 268, 249 S.W.2d 591 (1952); Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390 (1946). This rule is one of general and not invariable application however.[2] It is based upon the theory that when the courts construe a legislative act, such construction, if it be considered a mistake by the Legislature, may be corrected, hence if there be no legislative change it will be assumed that the Legislature approved the judicial construction particularly when the statute has been re-enacted without substantial change in wording. However, when the court construes a portion of a statute and such construction, if applied to all portions of the statute, would render the legislative enactment absurd and unworkable, the force of the stare decisis argument based upon legislative inaction or failure to substantially amend, is measurably diminished.

It is my thesis that the paragraph may be properly construed in accordance with the Patterson opinion so that it will be neither repugnant as to terms nor meaningless. Admittedly the wording of the paragraph leaves much to be desired from the standpoint of clarity. However, if we can see what the Legislature is driving at and recognize a feasible workable plan under which the paragraph may be given meaning, we should not ignore this portion of the enactment as being contradictory and hence without force. Cf. Johnson v. United States, 1st Ct. of App., 163 F. 30, 181 L.R.A.,N.S., 1194.

While the Patterson case was concerned with temporary partial injuries to three fingers, the dominant holdings of the case

1. "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; *but this Section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one (1) member, for which member compensation is provided in this schedule, compensation* for specific injuries under this law shall be cumulative as to time and not concurrent." (Italics are used to designate the two clauses of the paragraph.)

2. For a discussion of this doctrine, see the majority and minority opinions in United States v. South Buffalo Railway Company, 333 U.S. 771, 68 S.Ct. 868, 92 L.Ed. 1077.

were that the first clause of the paragraph in question applied to temporary losses of use of specific members of the body and that the second clause of the paragraph applied to permanent losses or losses of use of specific members.

Such difficulty as is encountered in the application of the two clauses in the paragraph to various factual situations lies in selecting extreme examples such as seldom, if ever, arise. Further, most of the difficulties of application even in these extreme factual situations do not arise from the application of the holdings of *Patterson,* but rather from the decisions contained in Lumbermen's Reciprocal Ass'n v. Pollard, Tex.Com.App., 10 S.W.2d 982 (1928) and Petroleum Casualty Co. v. Seale, Tex.Com. App., 13 S.W.2d 364 (1929) which introduced the concept of partial or percentage loss of use of a specific member of the body. No difficulty is encountered when losses or total losses of use are involved.

We first examine cases of permanent and total losses and losses of use.

Article 8306, § 12, Vernon's Ann.Tex. Stats. provides for compensation for partial incapacities occasioned by the loss or loss of use of specific members of the body.[3] If a leg be lost, the partial incapacity occasioned thereby is compensated by paying the injured workman 60% of his average weekly wage for 200 weeks. If a hand be lost the partial incapacity occasioned thereby is compensated by paying the injured workman 60% of his average weekly wage for 150 weeks.[4] Obviously, a loss of a member is a permanent and not a temporary condition. (The same may be said of a permanent and total loss of use of a member.) In the case of the loss of a leg

and a hand, the second clause of the paragraph would apply and the workman would receive 60% of his average weekly wage for a total of 350 weeks. In rare instances compensation payable for a combination of losses of specific members might add up to more than 401 weekly installments of 60% of the average weekly wage. As 401 weeks is the outside limit for permanent and total disability, I would not attribute to the Legislature an intention to compensate a workman for a number of partial incapacities (represented by the loss of a number of specific members) in an amount greater than that provided for total and permanent disability. To do so would be in effect to recognize that the parts may be greater than the whole and would not be in keeping with the plan or scheme of the Workmen's Compensation Act. I would say then that the outside limit for a combination of losses of specific members of the body would be 60% of the average weekly wage for a period of 401 weeks.

Similarly, permanent partial losses of use of specific members present no great problem insofar as the second clause of the paragraph is concerned. It could well be that at the time the Workmen's Compensation Act was originally passed the Legislature did not contemplate that what is now Article 8306, § 12 would be applied to partial losses of use of specific members. However that may be, the Pollard and Seale cases held that the partial incapacity occasioned by a partial loss of use of a specific member should be compensated by paying to the injured workman the amount of compensation provided for a loss or total loss of use of the member, multiplied by the percentage of the partial loss of use of the member. That is, if a workman suffered a

3. The distinction between a "partial incapacity" and a "partial loss of use" of a member must be kept in mind. Under the statute a total loss of the use of the hand is a "partial incapacity." Likewise a partial loss of the use of the hand is a "partial incapacity."

4. The combinations of injuries given herein are illustrative only and relate to the

provisions of Article 8306, § 12. The loss of a leg and the loss of a hand would seem to be a more serious injury than the loss of a hand and the loss of a foot, Article 8306, § 11a, but would draw more compensation than that paid for total and permanent incapacity.

75% loss of use of his hand he would be entitled to receive 75% (or 3/4) of 60% of his average weekly wage for 150 weeks.

In cases of permanent partial losses of use of a member, this same percentage formula could be applied consistently with the provisions of the second clause of the paragraph here involved. Compensation for the loss paying the greater amount of money per week would first be paid, followed by the partial loss of use carrying the next highest weekly rate, etc. It would be an extremely rare case where the compensation paying period for a combination of permanent partial losses of use would exceed 401 weeks, particularly as the number of weeks specified as the limit for a loss of a member would set a similar limit for the partial loss of use of a member. However, in view of an unlikely occurrence where the limit of weeks would exceed 401, I would not say this was the outside limit of compensation for permanent partial losses of use of several members, but that the *amount* paid could not exceed the amount realized from 401 payments of 60% of the average weekly wage or the statutory maximum of $35.00 per week. A 3% loss of the use of the hand (150 weeks) plus a 10% loss of a leg (200 weeks) plus a 15% loss of the sight of one eye (100 weeks) would call for payments extending over 450 weeks. The amount paid, however, would be far below the maximum in money allowed for total and permanent incapacity. Obviously, the schedules contained in Article 8306, § 12 providing for a combination of losses of specific members such as the loss of an eye and leg above the knee have no application to partial losses of use of members.

We now consider temporary total losses of use. It was the holding of the Patterson case that the first clause of the paragraph in question applied only to cases involving temporary losses of use of specific members of the body. If we have a temporary total loss of use of more than one specific member, no difficulty is encountered. If a workman suffers a temporary total loss of the use of a leg of 15 weeks duration and a temporary total loss of use of a hand for 75 weeks duration, he is entitled to recover compensation at the rate of 60% of his average weekly wage for 75 weeks and not 90 weeks. This because at the end of 75 weeks he is ready to return to work and he has drawn the allowable maximum in compensation for the period of time he was not working. When compensation is paid for the loss or loss of use of specific members, such compensation under the statute is paid for a partial incapacity measured by a fixed standard or schedule which arbitrarily treats a loss or loss of a member as being a "partial incapacity" entitling him to compensation for so many weeks. In cases of temporary total losses of use, when the "loss of use" comes to an end and the member of the body again becomes usable, it is obvious that the partial incapacity (loss of use of the member) comes to an end and hence the compensation likewise ceases. Such was the holding of the Patterson case and it presents no great difficulty of application insofar as temporary total incapacities are concerned. Of course, as pointed out in *Patterson*, compensation for a temporary total loss of use of a member cannot exceed the amount paid for a permanent total loss of use of a member.

We next consider temporary partial losses of use and here we encounter the only real difficulty involved in the construction problem. This clause provides that the workman shall receive compensation only for the injury which produces the longest period of incapacity. It is possible that in cases of temporary partial losses of use of more than one member the greater amount of money may not be paid for the incapacity of the longest duration when the compensation payable is measured under the holdings of the Pollard and Seale cases. For example, a workman may suffer an 85% loss of use of a hand of 50 weeks duration and a 10% loss of the use of a leg for 70 weeks duration. The amount of

money payable for the temporary partial loss of use of the hand would be much greater than the amount of money payable for the temporary partial loss of use of the leg,—this because of the percentage of the losses of use involved. It was the obvious purpose of the clause to prevent double payments for partial incapacities which are temporary in nature. The maximum rate of compensation is 60% of the average weekly wage subject to the overall limit of $35.00 per week. It was not contemplated that one who suffered a temporary loss of the use of a hand and the concurrent temporary loss of a leg should be compensated for both temporary losses of use, but that compensation should cease when the "loss of use of both members"—the partial incapacity—came to an end. Since the prevention of the culmination of payments for temporary losses of use is the prime objective of the clause, it would seem entirely consistent with the spirit and purposes of the Act to say that in cases of temporary partial incapacities where compensation is measured by a percentage of losses of use of specific members, the workman should be paid the greatest weekly amount to which he would be entitled by reason of the respective losses of uses suffered by him, followed by the lesser weekly amounts if there be other losses of use extending over a greater period of time. To return to the example given, I would say that the workman would be entitled to 85% of 60% of the weekly wage for 50 weeks to be followed by 10% of 60% of the average weekly wage for an additional period of 20 weeks.

As heretofore stated, it seems clear that the practical difficulty of application of the first clause of the paragraph does not arise from the holdings in *Patterson* but rather from the decisions in the Pollard and Seale cases and it is not suggested that the holdings of *Pollard* and *Seale* and the long line of cases following them be overruled.

I would further say that where a permanent partial loss of use follows a temporary total or partial loss of use, that the

permanent partial loss of use carrying the greater amount of weekly compensation would run concurrently with the compensation paid for the temporary total loss of use. Obviously, if a workman suffered an injury resulting in a temporary total loss of use of a leg for 15 weeks followed by a permanent 50% loss of the use of leg, his compensation would be 60% of his average weekly wage for 15 weeks followed by 50% of 60% of the average weekly wage for 185 weeks so as to reach the 200 week statutory limit. The situation would not be changed if he suffered an additional injury to the hand resulting in a temporary total disability of 10 weeks followed by a permanent 15% loss of the use of the hand. His compensation would be 60% of his average weekly wage for 15 weeks followed by 50% of 60% of the average weekly wage for 185 weeks, followed by 15% of 60% of the average weekly wage for a period of 150 weeks, the statutory limit set for the loss of a hand. If the original temporary loss of use was partial only, say 90%, the principle of compensation would be the same, i. e., 90% of 60%.

In my opinion the paragraph in issue can be given a meaningful construction in accordance with the Patterson, Pollard and Seale cases. This is a matter of statutory construction and if a reasonable construction of the paragraph can be set forth which is consistent with our prior decisions, that construction should be followed.

The result may then be examined by the Legislature and proper action taken, should the legislative branch believe that the objectives of the Workmen's Compensation Law could be better served by a re-writing of the paragraph discussed in the opinions handed down in this case.

SMITH, Justice (dissenting).

I respectfully dissent. The cause was tried to a jury. The trial court entered a judgment in favor of the plaintiff, but not to the extent prayed for in his motion for judgment. On appeal, the Court of

Civil Appeals, in effect, granted plaintiff's motion for judgment by reversing the judgment of the trial court and rendering judgment for the plaintiff for more compensation than awarded by the trial court. 366 S.W.2d 263.

Plaintiff's original petition was filed on June 28, 1961. Plaintiff's pleadings, as originally filed, alleged a cause of action against the defendant, claiming compensation for general injuries sustained in the course of his employment. On February 14, 1962, the plaintiff filed a trial amendment, amending paragraph III of his original petition by adding a new paragraph, which for the first time alleged:

"That as a result of said injuries as hereinabove set out and the conditions resulting therefrom, including the treatment thereof and the pain incident thereto, the Plaintiff, Oliver London, has been caused, by reason of the accident in question, to suffer the total permanent loss of the use of his left leg, his left and right hand at or above the wrists within the meaning and definitions of the Workmen's Compensation Law of The State of Texas."

In answer to the original petition, the defendant pleaded a general denial, and that plaintiff's earning capacity on and after August 29, 1959, the date of the alleged injury, was equal to or greater than his earning capacity prior to said date, and that the plaintiff, after said date, had the capacity and ability to earn money at a higher average weekly wage after the injury than prior thereto.

The defendant also pleaded defensively that plaintiff's injury, if any, was temporary in duration, partial in extent, "and resulted from matters and things in no way connected with his employment * * *; and in the alternative, defendant pleads that such matters were the sole cause of any alleged disability."

The jury found against the plaintiff so far as his alleged general injuries were con-cerned. We are concerned with the question as to the number of compensable weeks to be allowed for the specific injuries sustained as found by the jury.

Special issues ten through thirty found that the plaintiff sustained a total loss of the use of his left leg, his right hand and his left hand. The jury found that the duration of the total loss of the use of the left leg was for a period of sixty weeks. However, the parties stipulated that the total loss of use of each of the members involved was for a period of 59 weeks, beginning August 29, 1959, and ending October 15, 1960. This accounts for the entry of judgment for a period of 59 weeks for the total loss of use rather than for the period of 60 weeks, as found in answer to Special Issue No. 11.

At this point it perhaps will be well to delineate the respective positions of the parties. The question presented is which of the two motions for judgment should have been granted by the trial court. My position is that the plaintiff's motion should have been granted and judgment entered for plaintiff in accordance with his prayer for judgment.

Plaintiff's prayer in his motion for judgment, moved the Court to enter judgment for him " * * * for payment of weekly compensation at the rate of $35.00 per week from and after August 29, 1959, to October 15, 1960, *a period of 59 weeks, followed* by the payment of weekly compensation at the rate of $17.50 per week for *91 weeks,* in payment of permanent loss of the use of plaintiff's *left hand,* followed by the payment of weekly compensation at the rate of $35.00 per week for *a period of 59 weeks, followed* by the payment of weekly compensation at the rate of $14.00 per week for *91 weeks,* in payment of permanent loss of the use of plaintiff's *right hand,* followed by the payment of weekly compensation at the rate of $35.00 per week *for 60 weeks,* followed by the payment of weekly compensation at the rate of $8.75 per week for *140 weeks,* in payment of permanent loss of the use of

plaintiff's *left leg.* \* \* \*" Emphasis added.

· The defendant attached a proposed judgment to its motion for judgment. The proposed judgment does not state the number of weeks for the total loss of use of the three involved members, but unquestionably the proposed judgment only allowed one 59-week period, whereas, the plaintiff contends for a judgment allowing a 59-week period for the total loss of use of the left leg, 59 weeks for the loss of use of the right hand, and 59 weeks for the loss of use of the left hand. The parties are in apparent agreement at this level of the proceedings as to the correctness of the judgment of the Court of Civil Appeals in allowing a recovery by plaintiff in accordance with his motion for judgment so far as the permanent *partial* loss of use of his left leg, his left hand and his right hand is concerned.

I take the position that in a case, such as we have here, where there is a finding of a temporary total loss of use and a permanent partial loss of use of a member, the number of compensable weeks allowed for the latter must be deducted from the number of compensable weeks allowed for the former. This position is in harmony with the Texas Workmen's Compensation Act and is supported, in principle, by authorities in this and other jurisdictions. The formula I advocate should be applied in the present case which involves the loss of use of three specific members. The fact that the loss of use of the three members was the result of a single accident is immaterial. Plaintiff is entitled to compensation for the loss of use of each member in accordance with the statute. The provisions of Article 8306, Section 12, Vernon's Annotated Civil Statutes, which govern this case, have been in effect since 1913. Of course, changes by amendment have been made by subsequent Legislatures, but from its original enactment, it was made unmistakably clear by the Legislature that it was its intention by the enactment of Section 12 to provide that an injured employee should receive a fixed and definite compensation for certain specific injuries enumerated therein.

The Texas statute, where concurrent specific injuries are involved, places no limitation upon the maximum number of compensable weeks of recovery. The controlling parts of Section 12 of Article 8306 are as follows:

"For the injuries enumerated in the following schedule the employee shall receive in lieu of *all other compensation* except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent (60%) of the average weekly wages of such employee, but not less than Nine Dollars ($9) per week nor exceeding Twenty-five Dollars ($25) per week, *for the respective periods stated* herein, to-wit:

"\* \* \*

"For the loss of a hand, sixty per cent (60%) of the average weekly wage during one hundred and fifty (150) weeks.

"\* \* \*

"For the loss of a leg, at or above the knee, sixty per cent (60%) of the average weekly wages during two hundred (200) weeks.

"\* \* \*

"In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member.

"\* \* \*

"\* \* \* *but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member,* for which member compensation is provided in this schedule, compensation for *specific injuries* under this law *shall be cumulative* as to time and not concurrent.

"In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same compensation as, the loss of that member; but the compensation in and by said schedule provided *shall be in lieu of all other compensation* in such cases." Emphasis added.

The foregoing provisions of the statute, especially those provisions of Section 12 which provide that the section (12) shall not affect liability for the concurrent loss or the loss of the use thereof of *more than one member,* and that compensation due for such specific injuries "shall be cumulative as to time and not concurrent," are rendered meaningless by the Court. London is due compensation for *each* of the specific members for the entire period of loss of use of such members. See: Texas Employers' Insurance Association v. Moreno, Tex.Com. App., 277 S.W. 84 (1925), cited with approval by this court in Texas Employers' Insurance Association v. Brownlee, 152 Tex. 247, 256 S.W.2d 76. In the Moreno case, the Court said: *"Of course, one can recover separately for the various injuries specified in section 12."* Instead of following the law as declared in Moreno, the Court in the present case is allowing a recovery for only one of the three periods that total loss of use exists, as found by the jury. The net result is to deny to London the sum of $4,130.00 due him under the statute. There is not one applicable word in Section 12, Article 8306, supra, that limits a claimant to only one period of total loss of use of a specific member where more than one member is involved. The holding of the Court, therefore, amounts to legislation by this court.

The defendant strongly relies upon the cases of Texas Employers' Insurance Association v. Patterson, (1946) 144 Tex. 573, 192 S.W.2d 255; and Texas Employers' Insurance Association v. Hollingshead, (1955) Tex.Civ.App., 282 S.W.2d 305, wr. ref.

The Patterson case presents a different factual situation than the factual background in the present case. In every case, the law is declared in the light of the facts involved and the findings of the trier of the facts. In the Patterson case, the jury found that as to each finger the loss of use was *temporary* and that the whole period of loss of use of each finger, including both the total and partial loss was the same, thirty-eight weeks. There was no finding that Patterson sustained any permanent loss of use of either finger. Section 12 of Article 8306, supra, is quoted in the Patterson opinion. It reads:

" 'Where the employé sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; *but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.'* " Emphasis added.

The Insurance Company in the Patterson case contended and this court held that the first part of the above quoted paragraph of Section 12, rather than the second part of the paragraph which has been underscored, should be applied. Since the loss of use of each finger was temporary and for a period of thirty-eight weeks, the Court properly held that:

"When, as in the instant case, an employee suffers concurrent injuries, here injuries to three of his fingers, resulting in *concurrent temporary* incapacities and he is paid for the injury that has caused the longest period of incapacity, his compensation has been measured by, and payment has been made for, the full period of incapacity caused by the injuries. The weekly payments, if cumulated, would continue

well beyond the period of the concurrent incapacities." (Emphasis added.)

The holding in the Hollingshead case is clearly not in point in the instant case as there was no finding with respect to either of Hollingshead's leg injuries that there was any *permanent* loss of use, all of such losses of use being *temporary* in duration, whereas, in the present case loss of use of the three members involved was *permanent*.

It is argued that the rationale of the Patterson case compels this court to limit a judgment in favor of plaintiff to a recovery of compensation for only one period of total loss of use rather than a recovery for the three periods of 59 weeks each, as found by the jury. In making this contention, it is sought to apply the first part of Section 12, Article 8306, just as was done in the Patterson case. Regardless of the rationale of the Patterson case, this Court cannot give a construction of the statute, as contended for by the defendant in the present case. Assuming there is an apparent conflict between the first part of the above quoted provision of Section 12, Article 8306, and the underscored provision which deals specifically with the concurrent loss or the loss of use thereof of more than one member, the first provision must yield to the latter.

Under this assumption, I concur with Chief Justice CALVERT in overruling the interpretation of the statute given by this court in that case. It has never been the intention of the Legislature that the courts should give such a strict construction of the Workmen's Compensation Act as to deprive a workman of the greatest recovery to be allowed under the facts of his case. The Court in the present case interprets the Patterson case as controlling. The Court declines to recognize that it has interpreted Section 12 in other cases.

This court in the case of Texas Employers' Insurance Association v. Brownlee, supra, rendered judgment for the plaintiff, allowing a recovery for the loss of the second finger—30-weeks compensation and for the loss of the third finger—21-weeks compen-

sation. In rendering such judgment, we took occasion to interpret Section 12 of Article 8306, supra. We said:

"The provisions of Article 8306, Section 12, * * * which govern this case, have been in effect since 1913. Of course, changes by amendment have been made by subsequent Legislatures, but from its original enactment, it was made unmistakably clear by the Legislature that it was its intention by the enactment of Section 12 to provide that an injured employee should receive a fixed and definite compensation for certain specific injuries enumerated therein. The Section enumerates the several specific injuries and provides that the compensation for *each* specified injury ' * * * shall be in lieu of all other compensation * * *.' " (Emphasis added.)

It is true the Legislature has re-enacted Section 12 since the Patterson decision. However, I contend that this court rendered its interpretation in Brownlee of Section 12 seven years after Patterson and the Legislature, no doubt, as I have thought, considered the Brownlee interpretation to mean that in cases involving concurrent specific injuries, full compensation should be allowed for *each* specific injury. While it is true that the parties stipulated that plaintiff was entitled to recover for the loss of each tip of the second and third finger, the fact remains that this court interpreted the statute to mean just that notwithstanding the stipulation.

In the case of Texas Employers' Insurance Association v. Maledon, Tex.Com. App., 27 S.W.2d 151 (1930), the Court interpreted Section 12 in connection with general and specific injuries. In the Maledon case, both general and specific injuries were involved. In such a situation the Court properly dealt with both clauses of Section 12. Because both general and specific injuries were involved, the Court interpreted both clauses of Section 12. Under the first clause, the Court allowed a recovery of

19 weeks, thus applying the clause which reads: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation *only* for the injury which produces the longest period of incapacity." The Court, however, made it clear that this clause had *no application* where the claimant had only sustained specific injuries. The Court further *interpreted* the statute, saying:

> "It is true the above provision [1st clause] is modified by the latter part of the same section of the statute, which provides: 'But this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.'"

The Court then went on to illustrate the meaning of the latter part of the clause. I quote:

> "We think, however, that the latter part of the section refers only to cases where the employee's disability results from more than one specific injury, and *not* to cases *where the disability results from a general injury, and a specific injury.*" (Emphasis added.)

I construe this language to mean that the first clause applies only where the disability results from a general injury and a specific injury; and that the *latter clause only* applies in cases confined to specific injuries. The Court in Maledon gave this illustration:

> "To illustrate, if an employee is totally disabled for 20 weeks by reason of the loss of one hand, and at the same time is also totally disabled for 10 weeks by the loss of one foot, *he would be permitted recovery for the total disability for each of the members;* this because because each such injury would be specific." (Emphasis added.)

This illustration makes it clear that full compensation must be allowed for all specific injuries involved in any given case. It is true that only one specific member was involved in Maledon, but it is clear what the decision would have been had two or three specific members been involved.

The Court, after discussing the case of Lumbermen's Reciprocal Association v. Pollard, Tex.Com.App., 10 S.W.2d 982, 983 (1928), held that:

> "Inasmuch as the specific schedule for the loss of the hand provides compensation at the rate of 60 per cent. of the average weekly wages for 150 weeks, and the defendant having sustained 40 per cent. permanent partial incapacity to the hand, he is entitled to 40 per cent. of 60 per cent. for the balance of the compensation period after deducting the 19 weeks already allowed him for total incapacity to the same member or 24 per cent. of his average weekly wages for a period of 131 weeks."

IN VIEW OF THE ILLUSTRATION GIVEN BY THE COURT, THERE IS NO DOUBT BUT THAT IF IDENTICAL INJURIES TO THREE SPECIFIC MEMBERS HAD BEEN SUSTAINED, THE COURT WOULD HAVE ALLOWED THE SAME RECOVERY FOR EACH. Of course, for the leg, the number of compensable weeks would have been increased to 200. It seems to me that it is perfectly clear that the first clause of Section 12 applies in cases where a general injury is involved either alone or simultaneously with a specific injury, and the latter clause applies in every case where only specific injuries are to be compensated.

The case of Nolan v. Ernest Construction Company (1942), 243 Ala. 460, 10 So.2d 547, involved facts similar to those involved in the present case. Section 279 of the Workmen's Compensation Act of the State of Alabama which is somewhat similar to the Texas statute, has been construed to mean

that total loss of use of a member shall be considered equivalent to loss of the member and that loss less than total shall be paid during that part of the time specified in the schedule for total loss or total loss of use of the respective member, which the extent of injury to the member, bears to its total loss. The loss of use of a member under the Alabama statute is tied into a definition of the member set forth in 279(C)1, by declaring that the total loss of the use of a member shall be considered as equivalent to the loss of that member, and that the loss less than total " 'shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss.' "

It was agreed in the Alabama case that the claimant sustained " 'a fifty percent. permanent and total loss of use, (?) but that the disability was one hundred percent. during forty weeks.' " I construe the opinion to hold that when a permanent partial loss of use of a member is concurrent with a temporary total loss of use of it, the number of compensable weeks allowed for the latter must be deducted from the number of compensable weeks allowed for the former. Applying that rule to the facts in the present case, the award for the loss of use of each member is determined by using as a basis the schedule in section 12, Article 8306, supra, which provides the number of compensable weeks for the loss of the use of a hand and a leg. Therefore, for each hand there would be a total of 150 compensable weeks for permanent loss of use. However, since during 59 of the compensable weeks a total loss of use existed, that number of weeks should be deducted from 150, leaving 91 weeks for the permanent partial loss of use of each hand. Recovery for the loss of the use of the leg is arrived at in like manner, except the basis would be 200 compensable weeks, as provided in the statute. Thus, compensation would be adequately allowed, as contemplated by the statute.

I would affirm the judgment of the Court of Civil Appeals.

CALVERT, Chief Justice (dissenting).

The proper judgment to be entered in this case—whether to cumulate weekly payments for temporary total loss of use found by the jury to exist with respect to the left hand, the right hand and the left leg of respondent, or to allow weekly payments for only one of such temporary total disabilities—requires, primarily, interpretation of one paragraph of sec. 12 of Article 8306, Vernon's Texas Civil Statutes.

At the outset I should state that I do not agree with certain interpretations heretofore given the paragraph. For example, I am convinced that its interpretation by this Court in Texas Employers Ins. Ass'n v. Patterson, 144 Tex. 573, 192 S.W.2d 255, followed in Texas Employers Ins. Ass'n v. Hollingshead, Tex.Civ.App., 282 S.W.2d 305, writ refused, is wrong, and should now be disavowed.

Sec. 12 of Article 8306 deals only with compensation benefits to be paid for injuries to specific members of the body. To put matters to be discussed in proper perspective, the pertinent paragraph of sec. 12 is quoted:

"Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this Section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one (1) member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent."

To find the meaning of the paragraph, or whether it may reasonably be given meaning, we need to know something of the legislative and judicial history of the Work-

men's Compensation Act, and particularly the history of Section 12.

The first Workmen's Compensation Act was passed in 1913. Acts 33d Leg., Regular Session, ch. 179, p. 429. That Act also contained a Section 12 providing benefits for specific injuries. For injuries to the hands, feet, fingers, toes, etc., the compensation provided was "for the loss by severance." When the Act was rewritten in 1917, Acts 35th Leg., Regular Session, ch. 103, p. 269, Section 12 was expanded to provide compensation, as to such injuries, for loss or permanent loss of use of members in the same language that appears in the Act today.. The enumerated benefits were "for the loss" of the specific members, which the Act declared to be "cases of permanent, partial incapacity," and it was provided that the "permanent loss of the use of the member" should be equivalent to and draw the same compensation as loss of a member. The Act of 1917 also contained in Section 12 the paragraph under consideration in the exact language of the present Act. In the many amendments to Section 12 throughout the years, this paragraph has never been changed.

Some ten years after passage of the Act of 1917 this Court, "to prevent injustice," began to "legislate" into Section 12 provisions which on its face and according to its plain provisions the Section obviously did not have or comprehend. But whether rightly or wrongly, this Court interpreted the Section to provide for and limit compensation which should be paid for injuries to specific members resulting in temporary loss of use, permanent partial loss of use, and temporary partial loss of use. See Lumbermen's Reciprocal Ass'n v. Pollard, Tex.Com.App., (1928), 10 S.W.2d 982; Petroleum Casualty Co. v. Seale, Tex.Com. App., (1929), 13 S.W.2d 364; Fidelity Union Casualty Co. v. Munday, Tex.Com.App., (1932), 44 S.W.2d 926; Great American Indemnity Co. v. Stultz, Tex.Civ.App., (1933), 56 S.W.2d 200, writ refused. It was only after having thus amended Section 12 that the Court was brought face to face

in *Patterson* with the paragraph of that Section quoted above.

In *Patterson* the Court held that a proper construction of the quoted paragraph did not authorize cumulated benefits for total loss of the use of each of three fingers for twelve weeks and a fifty per cent partial loss of the use of each of the fingers for twenty-six weeks. The Court held that inasmuch as the loss of use (both total and partial) of each of the three fingers was temporary, payment of benefits was governed by the first clause of the paragraph and not by the last clause, the last clause of the paragraph, in the language of the opinion, being applicable "to permanent loss and permanent loss of use, and not to temporary loss of use." Three reasons were assigned in the opinion for the conclusion reached: (1). Because "The payment, contemplated by the statute, for temporary loss of use of a member of the body is compensation for incapacity and is measured by the duration of the incapacity * * *" and "The weekly payments, if cumulated, would continue well beyond the period of the concurrent incapacities." (2). Because the last clause of the paragraph speaks only of "'loss or the loss of the use' with no reference to temporary loss of use." (3). Because the last clause "speaks of the loss or the loss of the use of more than one member 'for which member compensation is provided in this schedule'"; and that "The schedule sets out definite compensation for the loss of different members of the body * * *," but "There is no schedule of payments for temporary losses of use."

Avowing the utmost respect for the Justices of this Court who rendered the *Patterson* decision and for the able Justice who authored the opinion, I nevertheless suggest that none of the three reasons is sound. I shall discuss the three reasons in the order in which I have listed them.

(1). The first reason appears to be expressly predicated on the concept that compensation payments for temporary loss of use of one of the specifically named mem-

bers of the body is compensation for *actual incapacity,* and that the payments should end when the incapacity ends. That concept of the purpose of the payments provided for specific injuries has been rejected many times over, and correctly so. It was expressly rejected with respect to a temporary total loss of use followed by permanent partial loss of use of a hand in Fidelity Union Casualty Co. v. Munday, Tex.Com. App., 44 S.W.2d 926, and as to a temporary total loss of use followed by permanent partial loss of use of an eye in Great American Indemnity Co. v. Stultz, Tex.Civ.App., 56 S.W.2d 200, writ refused. In addition, there are many Court of Civil Appeals' decisions rejecting it. In cases involving specific injuries, existence, percentage and duration of *incapacity* is not even a proper subject of inquiry. As a matter of fact, the record discloses that in *Patterson* no issues were submitted and no findings were made with respect to incapacity.

Once a loss or loss of use, total or partial, permanent or temporary, is established, the right to benefits rests in *presumed* incapacity which the Legislature has predetermined but which may or may not actually exist. By providing benefits for a given number of weeks for loss or loss of use of a member of the body, the Legislature severely limited the benefits of the workman, who, because of the loss, suffers permanent total incapacity to labor, and compensated for the limitation by relieving the workman of the burden of proving any incapacity whatever. By interpreting Section 12 to include compensation for specific injuries producing temporary total, permanent partial and temporary partial losses of use, the Court necessarily also adopted the concept of *presumed* incapacity as related thereto.

If it may be said that in *Patterson* the Court was speaking of *presumed* incapacity, the first reason for holding that benefits for temporary loss of use cannot be cumulated under the statute but benefits for permanent loss or loss of use can be, is totally incongruous. This for the reason that to permit cumulation of benefits for permanent

loss or loss of use would also result in payment of benefits long after the period of presumed incapacity had ended.

(2). It is true that the last clause of the paragraph speaks only of loss or loss of use with no reference to temporary loss of use, but that does not justify an interpretation that the last clause applies only to permanent losses of use and the first clause to temporary losses of use. The paragraph should be interpreted in light of its history. It should be interpreted now as it would have been interpreted when it was written in 1917.

The quoted paragraph of Section 12 was written and enacted long before *Pollard* (1928), *Seale* (1929), *Munday* (1932) and *Stultz* (1933) firmly established that Section 12 impliedly covered temporary total, permanent partial and temporary partial losses of use of specific members. Viewing the paragraph in the setting in which it was enacted in 1917, there is no sound basis for saying that the first clause was intended by the Legislature to apply to temporary losses of use and the second clause to permanent losses of use.

All of the described *losses* were declared to be "cases of permanent, partial incapacity," and "permanent loss of the use" of a member was declared to be equivalent to the loss of the member. The Legislature placed the quoted paragraph immediately following the last schedule of losses. Its first clause stated, and still states: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; * * *." It thus seems quite clear that when the Legislature wrote that clause into the paragraph and spoke of "concurrent injuries," it was speaking of injuries producing "loss" and "permanent loss of use" of members; and when it spoke of the employee receiving compensation only for the injury which produces "the longest period of incapacity," it was speaking of the greatest number of weeks allocated in

Section 12 as a period of *presumed* "permanent partial incapacity" for any member so injured. The Legislature could not then have known that the courts would later imply temporary and partial losses of use into the schedule.

Moreover, the first clause makes sense if it is held to apply to concurrent total losses of use, whether temporary or permanent; it makes no sense if it is held applicable to other concurrent losses of use. The clause says that where the workman sustains concurrent injuries resulting in concurrent incapacities, "he shall receive compensation only for the injury which produces the longest period of incapacity." If the clause is applied to concurrent total losses of use, whether temporary or permanent, recovery of compensation for the injury producing "the longest period of incapacity," actual or presumed, will always provide the greatest amount of benefits. If it is applied to other concurrent losses of use, recovery of compensation for the injury producing "the longest period of incapacity" will often provide the least amount of benefits.

But *Patterson* states that since the second clause speaks only of " 'loss or the loss of the use,' with no reference to temporary loss of use," that clause will be held applicable only to losses or permanent losses of use. This conclusion presents the strange paradox of reading *temporary* losses of use into the schedules which by express language are set up for losses and *permanent* losses of use, but refusing to read it into the phrase, "loss or the loss of the use," where it appears in the second clause of the quoted paragraph without the qualifying adjective, "permanent." It seems to me that there is more reason for reading temporary losses of use into the last clause of the quoted paragraph than there is for reading them into the schedules of benefits; and I can find nothing in the Act to indicate that "loss or loss of use" should include temporary loss of use in the benefit schedules, but should not include it in the second clause of the quoted paragraph.

(3). The third reason given for the conclusion reached in *Patterson* involves, in my judgment, a misconstruction of the last clause of the paragraph. The clause reads: "but this Section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one (1) member, for which member compensation is provided in this schedule \* \* \*." *Patterson* reasons that since the schedule provides compensation *only* for permanent losses of use of members, the second clause is inapplicable to temporary losses of use of members. I suggest that this reasoning is erroneous and derives from misplaced emphasis; that the emphasis of the language should be on the *members* for which compensation is provided in the schedule rather than on *the degree or extent of the loss of use* for which compensation is provided in the schedule. The *members* for which compensation is provided in the schedule are fingers, hands, arms, toes, legs, eyes, etc. To me, the quoted language means that the section "shall not affect liability for the concurrent loss or the loss of the use thereof of more than one" of the members listed in the schedule, but compensation for concurrent injuries to such members "shall be cumulative as to time and not concurrent."

My interpretation of the quoted language is made the more plausible by the fact that certain *members* of the body—the nose, the ears, etc.—are not listed in the schedule; and I share the view expressed by Justice Folley in Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390, 402, that compensation for loss of members omitted from the schedule is provided in the last paragraph of Section 12 covering "all other cases of partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employé."

But even if I be wrong and *Patterson* be right as to the proper placing of emphasis in the quoted language, here again we encounter the strange paradox of this Court refusing to read temporary losses of use

into the last clause of the quoted paragraph after having read them into the benefit schedules.

## CONCLUSION

I am firmly convinced that the *Patterson* interpretation of the quoted paragraph is erroneous. The question remains as to the proper interpretation thereof. What did the Legislature intend by the enactment of this paragraph as a part of Section 12 which deals exclusively with specific injuries?

The legislative history of the 1917 Act throws no light on the meaning of the paragraph; it was in the bill in its present language when the bill was introduced in the Legislature, and no amendments to the paragraph were offered. The Compensation Acts of Alabama, Minnesota and Tennessee contain similar paragraphs, but the paragraph in those Acts is set in such a dissimilar context of benefits that decisions of courts of those states are not helpful in arriving at the meaning of the paragraph in the Texas Act.

The two clauses of the paragraph are utterly incompatible and repugnant. When the paragraph was included in the Act of 1917, Section 12 dealt only with losses of members ("severance", according to the Act of 1913) and "permanent loss of the use of the member" which was declared to be "equivalent to * * * the loss of that member." Both loss of a member and permanent loss of the use of a member were declared to be "cases of permanent, partial incapacity." When in the first clause of the quoted paragraph the Legislature declared that where an employee sustained concurrent injuries resulting in concurrent incapacities, necessarily of the kind defined in the preceding schedule, he should "receive compensation only for the injury which produces the longest period of incapacity," it prohibited, by necessary implication, cumulation of benefits. On the other hand, the Legislature expressly provided in the second

clause that liability for compensation for concurrent injuries of the type defined in the preceding schedule should continue to exist, and that benefits therefor should be cumulated as to time. The two clauses cannot stand together.

I would hold that the two clauses are so repugnant as to render the paragraph meaningless and void. See Hill County v. Sheppard, 142 Tex. 358, 178 S.W.2d 261. Having declared the paragraph void, I would then hold that with no internal prohibition in Section 12 against cumulating payments for specific injuries, and none elsewhere, cumulation of payments is authorized, whether the payments be for permanent, temporary, total or partial losses of use; and I would cumulate the payments in a descending order of value to the injured employee, allowing recovery of the greatest amount possible under the specific injury schedule in light of the findings of the jury or the trial judge. See Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73. Finally, I would hold that except as otherwise provided in Sections 12 and 11a, cumulation of payments could not extend beyond 300 weeks, the maximum number of weeks provided in Section 11 and the last paragraph of Section 12 for payment of compensation for partial incapacity.

Applying my views to the jury findings in this case, the trial court's judgment should have been for $35.00 per week for 177 weeks for temporary total loss of use of the two hands and the leg, $17.50 per week for 91 weeks for permanent partial loss of use of the left hand (thus reaching the schedule limit of 150 weeks for loss of use of the left hand), and $14.00 per week for 32 weeks for permanent partial loss of use of the right hand, reaching at this point the outside limit of 300 weeks for which compensation for partial incapacity is payable, a total recovery of $8,325.50. But inasmuch as petitioner did not object to or appeal from that portion of the trial court's judgment cumulating, as to time, compensation for permanent

partial loss of use of the three members, I would affirm the judgment of the Court of Civil Appeals.

Section 12 of Article 8306 has been re-enacted since the *Patterson* decision without change in the quoted paragraph. I am not unaware or unmindful of the rule that when a statute has been interpreted by a court of last resort and it is re-enacted without change of language, the presumption is that the judicial interpretation is adopted by the Legislature and becomes a part of the statute. Texas Fidelity & Bonding Co. v. City of Austin, 112 Tex. 229, 246 S.W. 1026, 1029. The rule is not inflexible. Its flexibility in the instant situation is recognized in 50 Am.Jur. 462, Statutes, § 443, in these words: "The rule is not, however, conclusive under all circumstances. The fact that a statute is re-enacted without alteration after its judicial interpretation, does not necessarily establish such interpretation as to preclude the court from overruling its former decision." Moreover, the repugnant character of the two clauses of the quoted paragraph was not called to the attention of the Court, nor was it considered by the Court in *Patterson*. While the Court could have ruled on the matter of its own volition, see Southern Canal Co. v. State Board of Water Engineers, 159 Tex. 227, 318 S.W.2d 619, the fact is that it did not do so and the Court now has the question before it for the first time.

The situation differs not at all from one in which the Court interprets a statute in one case only to have its constitutionality called in question in a later case. In that situation the Court would not hesitate to declare the statute void for unconstitutionality merely because on a former occasion it had interpreted the statute. If a statute is void for repugnancy, it is just as void as if it were void for unconstitutionality. *Patterson* and *Hollingshead* are so patently wrong that I suggest that we overrule them and declare the quoted paragraph void for repugnancy; and that we then make a fresh start in

the area of cumulation of compensation for specific injuries in keeping with other provisions of the statute, leaving to the Legislature, where the responsibility properly rests, the right to correct any supposed inequities.

Instead, the Court chooses a course of compounding the error of *Patterson* by now holding that the second clause of the quoted paragraph also applies to specific injuries producing permanent partial loss of use of a member and the first clause does not. Not only is that holding as devoid of basis in logical analysis of the statute as is *Patterson*, it also flies in the face of an important phase of *Patterson's* rationale. It will be recalled that the second and third reasons given in *Patterson* for holding that the second clause could not apply to temporary losses of use were (2) because the last clause of the paragraph speaks only of " 'loss or the loss of the use' with no reference to temporary loss of use"; and (3) because the last clause "speaks of the loss or the loss of the use of more than one member 'for which member compensation is provided in this schedule';" and that "The schedule sets out definite compensation for the loss of different members of the body * * *," but "There is no schedule of payments for temporary losses of use." Both reasons exclude application of the last clause of the quoted paragraph to permanent partial losses of use; there is no reference in the clause to partial loss of use, and there is no schedule of payments for permanent partial losses of use. It thus appears that while the Court insists, on the basis of stare decisis, that the specific *holding* in *Patterson* be followed, it also disavows most of the reasons given in *Patterson* for its holding.

The new holding that benefits for permanent partial loss of use may be cumulated with benefits for permanent total loss of use but benefits for temporary total loss of use may not be, leads to strange and interesting results. By way of illustration, consider that an employee with an

average weekly wage of $100.00 sustained concurrent injuries to a hand and a foot which resulted in: (a) permanent total loss of the use of the hand and the foot; (b) permanent 90% partial loss of the use of the hand and the foot; (c) temporary total loss of use of the hand for 124 weeks and permanent 10% partial loss of use of the foot.

Under *Patterson* as extended by the holding in this case, we would get these results: In (a), benefits would be cumulated and the employee would be paid $35.00 per week for 150 weeks for loss of use of the hand and $35.00 per week for 125 weeks for loss of use of the foot, a total of $9,625.00. In (b), the benefits would be cumulated and the employee would be paid $31.50 per week for the combined period of 275 weeks, a total of $8,662.50. In (c), benefits for 124 weeks temporary total loss of use of the hand could not be cumulated with benefits for permanent partial loss of use of the foot; and since in such circumstances the first clause of the quoted paragraph expressly directs that the employee be compensated *only* for the injury "producing the longest period of incapacity," the employee could be paid only the compensation provided for 10% partial loss of use of the foot for 125 weeks, a total of $437.50, and would lose the benefits provided for loss of use of the hand in the sum of $4,340.00. That will be the result in such a case unless this Court is prepared to "legislate" some more and declare that when the Legislature expressly provided that the employee should be paid *only* for the "injury which produces the longest period of incapacity" it really meant that he should be paid only for the "injury which under the schedule of payments would provide the greatest recovery."

There should be an end of legislating in this field by the Court. It is perhaps too late to recant the decisions which read temporary total, permanent partial and temporary partial losses of use into the specific injury schedule in Sec. 12, Art. 8306; but

it is not too late, or even a violent disregard of the rule of stare decisis, to recant the interpretation in *Patterson* of the quoted paragraph and declare the paragraph void for repugnancy. There is no insurmountable barrier to overruling *Patterson*. It did not lay down a rule of property on which others may have relied. It simply denied to one injured workman compensation to which he was justly entitled under the Workmen's Compensation Act properly interpreted. That injustice cannot be remedied but further injustice should not be perpetrated upon injured workmen because of some hallowed concept of stare decisis in the interpretation of a statute. As said by the Supreme Court of the United States in United States v. Raynor, 302 U.S. 540, 552, 58 S.Ct. 353, 358, 82 L.Ed. 413, 420, "One decision construing an act does not approach. the dignity of a well settled interpretation." Confronted with a similar problem in Pennsylvania-Reading Seashore Lines v. Board of Public Utility Com'rs, 5 N.J. 114, 74 A.2d 265, the Supreme Court of New Jersey, speaking through Chief Justice Vanderbilt, said:

"It is urged on us that the construction put on the statute by the O'Connor case [O'Connor v. Board of Public Utility Com'rs, 129 N.J.L. 263, 29 A.2d 390] became a part of the statute which we may not change, that power residing solely in the Legislature. However, this rule of legislative acquiescence in the well settled interpretation of a statute is but one of several principles that may guide a court in arriving at the true meaning of a legislative act. It is no more than an aid in statutory construction and it is merely one factor in the total effort to give meaning to the language of the statute. * * * The doctrine here contended for is not uniformly controlling; it must not be permitted to fetter the courts in their search for light. The principle of *stare decisis* which lies behind the doctrine is enti-

tled to respect, but it must not blind us to realities; it is not an idol to be worshipped in following either a judicial precedent or an antecedent statutory construction."

Because of the failure to declare the quoted paragraph of Section 12 void for repugnancy and then to affirm the judgment of the Court of Civil Appeals, I respectfully dissent.

HAMILTON and STEAKLEY, JJ., join in this dissent.